### In re SAN JUAN DUPONT PLAZA HOTEL FIRE LITIGATION.

### Appeal of ALLIED–SIGNAL, INC., et al.

### No. 89–2049.

United States Court of Appeals, First Circuit.

Heard April 5, 1990.

Decided June 20, 1990.

See also 742 F.Supp. 717.

Katherine K. Yunker, with whom Victor B. Maddox, Brown, Todd & Heyburn, Lexington, Ky., Hector Melendez Cano, Trias, Doval, Acevedo & Otero, Hato Rey, P.R., Benjamin Acosta, Jr., Law Offices of Benjamin Acosta, Jr., San Juan, P.R., Edward A. Moss, Lawrence D. King, Anderson, Moss, Parks & Russo, P.A., Miami, Fla., Eric A. Tulla and Rivera, Tulla & Ferrer, Hato Rey, P.R., were on joint brief, for appellants.

Alvaro Calderon, with whom Peter Berkowitz, Hato Rey, P.R., Stanley M. Chesley, Cincinnati, Ohio, John Cummings, III, Wendell H. Gauthier, Metairie, La., David C. Indiano, San Juan, P.R., Will Kemp, Las Vegas, Nev., Harvey B. Nachman, Santurce, P.R., Jorge Ortiz Brunet, Hato Rey, P.R., Jorge M. Suro–Ballester, Santurce, P.R., Francisco M. Troncoso, Old San Juan, P.R., Sherrill Hondorf and Waite, Schneider, Bayless & Chesley Co., L.P.A., Cincinnati, Ohio, were on brief, for appellee Plaintiffs' Steering Committee.

Before BREYER, Chief Judge, CAMPBELL and SELYA, Circuit Judges.

PER CURIAM.

This appeal arises from Partial Judgment No. 47 dismissing Defendants Carol Cable, Inc., Mobay Corporation, and Tarkett, Inc. (the "Settling Defendants") with prejudice from the San Juan Dupont Plaza Hotel Fire Litigation, MDL–721, which was consolidated and transferred to the District of Puerto Rico in May 1987. In December 1987, the Plaintiffs' Steering Committee (PSC) filed a Revised Master Complaint, naming as defendants (1) those persons and entities that owned or controlled the Hotel and (2) various persons and business entities alleged to have provided products or services to the Hotel. Each person or business entity in the latter category was alleged to have provided products or services either directly to the Hotel or which eventually were put in the Hotel, and to be liable to the plaintiffs on theories of negligence, breach of implied and express warranties, failure to warn, product liability, or market share liability relating to those products or services.

The liability claims against the product and services defendants were scheduled for hearing in the Phase Two trial. All claims for apportionment of responsibility for any damages, as well as all cross-claims for contribution, were reserved for adjudication in a subsequent phase of the litigation. On March 7, 1989, settlements between the PSC and the Settling Defendants, Carol Cable, Tarkett, and Mobay, were announced in Settlement Orders Nos. 8, 9,

and 10, respectively.[1] On June 2, 1989, the District Court entered Pretrial Order No. 190, listing the Settling Defendants together with five other settling parties and announcing that they would not be participating in the Phase Two trial. The order required parties wishing to prosecute direct actions, cross-claims, or third-party claims against any party listed to show cause for doing so or waive any objection they may have to dismissal of the settling parties from the litigation. The product and services defendants remaining in the litigation (the "Non–Settling Defendants") responded, objecting to the dismissal with prejudice of their potential cross-claims against the Settling Defendants as both premature and in derogation of their statutory right under Puerto Rico law to seek contribution if they were to be found liable to the plaintiffs and were to pay a judgment to the plaintiffs for more than their equitable share. On September 7, 1989, the district court entered Partial Judgment No. 47, in which it dismissed "all claims by and against" the Settling Defendants with prejudice.

The Non–Settling Defendants have brought this appeal, requesting this court to vacate or reverse Partial Judgment No. 47. Their sole objection to Partial Judgment No. 47 is that it might be read to divest the Non–Settling Defendants permanently of the right to bring against the Settling Defendants potential contribution claims which conceivably may arise in the future. Appellee PSC in its brief has sought to allay appellants' fears by terming the right to bring future contribution

claims "essentially a non-issue." Appellee goes so far as to state that "Partial Judgment No. 47 in no way forecloses Non–Settling Defendants['] claimed right to seek contribution, should it ever arise."

We believe, that the decree can and should be interpreted in the manner appellee suggests—as not preventing appellants from pursuing contribution claims that may arise in the future. To read the decree more restrictively would embroil the district court and ourselves in a serious problem as to the extent of the district court's authority to eliminate by fiat substantive rights of this nature. We doubt that the court meant to take on such a burden, and absent a clearer indication, we decline to read the decree as intending such a result. In so declaring, we bear in mind the necessarily speculative character at this time of potential contribution claims. This is underscored by Mobay's argument that future contribution claims would be barred anyway by the indemnification agreement between the PSC and the Settling Defendants.[2] We have made no attempt to ascertain whether or not this is so, and nothing said here is meant to affect that proposition. But we are persuaded that the issue of contribution claims among the defendants is not one which the decree in question should be read to reach.

Subject to our firm understanding that the decree is not to be construed by the district court as constituting a bar to future contribution claims against the Settling Defendants (assuming such claims arise and assuming they are not barred by

1. Several of the other defendants in the products and services category have settled as well, but they are not the subject of the present appeal, as no party has asserted a right to cross-claim against these settling parties in the future.

2. Mobay characterizes the indemnity agreement as an agreement by the PSC to hold the Non–Settling Defendants harmless for any percentage of fault for the damages apportioned to the Settling Defendants. Under this scenario, Non–Settling defendants would not be required to pay to the plaintiffs any sums attributable to any percentage of liability assessed against the Settling Defendants. Mobay states:
   Under the terms of the indemnity agreement, it is not possible for a party to be required to pay more than its proportionate share of any

award, since plaintiffs have agreed not to seek any excess which may be attributable to any settling defendant. Because such claims by definition accrue only after a party is required to pay in excess of its proportionate share, the indemnification agreement nullifies the basis for any contribution claim.
   If this characterization is correct, it appears that no valid contribution claims could ever arise against the Settling Defendants. As we say above, however, we do not attempt to determine whether Mobay's interpretation is correct. The indemnity agreement, in any event, seems better suited than the decree in question to dealing with the contribution issue, at least in the present context and sequence of events.

agreement or otherwise), we affirm Partial Judgment No. 47.

*So ordered.*

SELYA, Circuit Judge (concurring in the result).

The majority, "absent a clearer indication" that the district court intended to block the appellants' possible future prosecution of contribution claims against the Settling Defendants, *ante* at 5, refuses to construe the district court's order according to its terms and tenor. Like the majority, I doubt that the district court possesses "authority to eliminate by fiat substantive rights" of the kind at issue here. *Id.* Like the majority, I agree that a judgment predicated on the Settling Defendants' arrangements with the PSC should "not prevent[ ] appellants from pursuing contribution claims that may arise in the future." *Id.;* see, *e.g., PNH Corp. v. Hullquist Corp.,* 843 F.2d 586, 594–95 (1st Cir.1988) (vacating dismissal of crossclaims where district court failed to "address adequately" potential indemnification and contribution liability); *cf.* Fed.R.Civ.P. 13(g). I part company with my brethren, however, in their reluctance to confess the district court's error, a reluctance which necessitates dressing the wolf of reversal in the sheep's clothing of a nominal affirmance.

Given the express language of Partial Judgment No. 47, there could hardly be any "clearer indication" that the district court intended its decree to have the very effect that the majority disclaims—an effect which the PSC at oral argument (but not in its brief, filed by other counsel), and the Settling Defendants, have urged should be accorded. The judgment, by its terms, "Dismissed with Prejudice ... all claims by and against the ... settling defendants." This language is plain enough, but the context in which the judgment was entered makes its import pellucid. The Settling Defendants candidly admit that a principal motive in settling with the PSC was the opportunity to put transactional costs behind them, that is, to escape from the maw of this massive litigation once and for all, avoiding among other things the hefty ex-pense of monitoring the case in order to estimate and limit their possible liability for contribution. By the same token, the district court's memorandum is premised on the court's determination that appellants had not shown an adequate basis for potential contribution claims against the Settling Defendants. In entering judgment, the court forthrightly stated that "there is no reason why the parties who have had all the claims against them dismissed should have to await the ultimate outcome of this case before obtaining a final disposition of the distinct claims filed by and against them...." Given these accouterments, it is impossible for me to impute any meaning to Partial Judgment No. 47 which would not pretermit the filing of crossclaims by the Non–Settling Defendants against the Settling Defendants.

Affirming the judgment by giving it a "reading" directly at odds with its words and context may be pragmatic, and even understandable in deference to a district judge saddled with the crushing weight of what we have termed a "litigatory monster," *In re Recticel Foam Corp.,* 859 F.2d 1000, 1001 (1st Cir.1988). Yet, I question whether these ends are worth putting at risk our institutional credibility. In any event, I cannot bring myself to indulge in so convenient a fiction, affirming when reversal is called for by upholding an action which the court below never really took.

Left to my own devices, I would vacate the with-prejudice dismissal as it pertains to the potential crossclaims and remand for the entry of dismissal without prejudice, giving the Settling Defendants the chance, however unlikely it may seem that they will use it, to reconsider their position in light of the changed circumstance. But, inasmuch as the result which flows from the majority's linguistic legerdemain is much the same as I would reach more directly, I am content to concur in the court's result, if not its reasoning. Shakespeare, perhaps, was right when he counseled: "All's well that ends well...."