### In re SAN JUAN DUPONT PLAZA HOTEL FIRE LITIGATION.

**William LYON and Holders Capital Corporation, Appellants, Cross–Claimants, and Cross–Defendants,**

v.

**PACIFIC EMPLOYERS INSURANCE COMPANY and First State Insurance Company, Appellees, Cross–Defendants, and Cross–Claimants.**

Nos. 93–2115, 93–2116.

United States Court of Appeals, First Circuit.

Heard Oct. 7, 1994.

Decided Jan. 27, 1995.

See also 45 F.3d 564.

Maureen E. Mahoney and Theodore A. Pianko with whom Milton A. Miller, Michael Bruce Abelson, Max L. Gillam, Latham & Watkins, Los Angeles, CA, Etienne Totti Del Valle, Dominguez & Totti, Hato Rey, PR, and Sidley & Austin, Los Angeles, CA, were on joint briefs, for William Lyon and Holders Capital Corp.

Ralph W. Dau with whom Peter B. Ackerman, O'Melveny & Myers, Los Angeles, CA, Raul E. Gonzalez–Diaz, A.J. Bennazar–Zequeira and Gonzalez & Bennazar, Hato Rey, PR, were on brief, for Pacific Employers Ins. Co.

Homer L. Marlow with whom Marlow, Connell, Valerius, Abrams, Lowe & Adler, Miami, FL, was on brief, for First State Ins. Co.

Before BOUDIN, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

BOUDIN, Circuit Judge.

These two appeals stem from the third and final phase of the San Juan Dupont Plaza Hotel fire litigation[1] and concern insurance coverage. Appellants William Lyon and Holders Capital Corporation ("Holders") challenge the district court's determination that certain excess liability policies issued by Pacific Employers Insurance Company ("PEIC") and First State Insurance Company ("FSIC") to Lyon and others do not cover the appellants' fire-related obligations. We affirm the district court.

## I.

Lyon is a principal shareholder and director of Holders, a holding company that invested in various hotels, including the ill-fated Dupont Plaza. In phase I of the fire litigation, the fire victims sued Holders and Lyon as well as the hotel and other defendants affiliated with it. (Phase II concerned liability claims against suppliers of goods and services to the hotel, and phase III sought to allocate liability of insurers.) Hoping to establish Lyon's personal liability (and so to reach his personal fortune), the fire victims sought in phase I to pierce Holders' corporate veil and to prove that the hotel was actually managed and controlled by a de facto partnership of Holders' three shareholders, Brian Corbell, William Eberle and Lyon (the so-called "Holders partnership").

In May 1989, after eight weeks of trial, Holders and Lyon, along with the other phase I defendants, entered into a multimillion dollar settlement agreement with the fire victims. Under the agreement, Lyon was to seek contribution from his various insurers, which included PEIC and FSIC, to fund his portion of the settlement. PEIC and FSIC both paid their policy limits to Lyon, $3 million and $2 million, respectively, subject to their right to seek repayment by Lyon if it was later determined in phase III that their policies did not cover the hotel fire. Phase III does not affect the victim's settlement fund. See In re Nineteen Appeals, 982 F.2d at 606.

The insurance policies at issue here were part of an excess coverage plan for the William Lyon Company, a southern California residential building and development company, as well as numerous other listed affiliated insureds, including Lyon himself. Within the excess coverage framework, the PEIC and FSIC policies provided second- and third-level excess coverage; first-level excess coverage was provided by National Union Fire Insurance Company. Other than Lyon himself, no entity connected to the Dupont Plaza was expressly listed as an insured.

In phase III of the litigation, Holders and Lyon both filed claims in the district court to affirm that PEIC and FSIC were responsible to provide coverage for the fire. To this end appellants needed a theory that would not

---

1. See In re Two Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig., 994 F.2d 956 (1st Cir.1993); In re San Juan Dupont Plaza Hotel Fire Litig., 989 F.2d 36 (1st Cir.1993); In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig., 982 F.2d 603 (1st Cir. 1992); In re San Juan Dupont Plaza Hotel Fire Litig., 958 F.2d 361 (1st Cir.1992) (table); In re San Juan Dupont Plaza Hotel Fire Litig., 907 F.2d 4 (1st Cir.1990); In re San Juan Dupont Plaza Hotel Fire Litig., 888 F.2d 940 (1st Cir.1989); In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007 (1st Cir.1988); In re Recticel Foam, 859 F.2d 1000 (1st Cir.1988).

only show that the policies extended to Lyon or Holders but also explain how Lyon or Holders could be liable for the fire under the policies; after all, the hotel was not insured by PEIC or FSIC; and in view of the settlement, no court had ever held Lyon or Holders liable for the fire. Accordingly, Lyon and Holders adopted the position taken by the fire victims in phase I of the litigation, *i.e.*, that Holders was merely a corporate shell and that Lyon had operated the hotel through the alleged Holders partnership.

On this theory, Holders and Lyon claimed coverage under the PEIC policy based on a so-called "omnibus" clause; this clause (they argued) extended coverage to any entity (here, Holders and the Holders partnership) in which a named insured (here, Lyon) had management responsibility or responsibility for insurance. Lyon claimed coverage for himself under the FSIC policy based on a "joint venture endorsement," which he argued explicitly covered his involvement in the alleged Holders partnership. Both policy provisions are set forth below.

On December 7, 1992, the district court granted summary judgment for PEIC and FSIC, ruling that neither policy covered Holders' or Lyon's fire-related obligations. The court held *inter alia* that PEIC's omnibus clause was ambiguous as to who was covered and thus should be construed against Lyon, its supposed drafter; and that a sole proprietor endorsement applicable to both the PEIC and FSIC policies, which limited coverage for individual insureds to their sole proprietorships, precluded coverage for Lyon's business involvement in the Dupont Plaza. The district court ordered Lyon to reimburse PEIC and FSIC the five million dollars they had advanced for the settlement obligations and then awarded PEIC and FSIC prejudgment interest on the amount. These appeals followed.

## II.

■ 1. Because the district court disposed of the case on summary judgment, we review the court's ruling *de novo*, *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993), and first address coverage under the PEIC policy. Holders and

Lyon claim that the district court erred in finding that the omnibus clause was ambiguous and then in construing it against Holders and Lyon. They contend that the clause unambiguously extends coverage to Holders and the Holders partnership and, if ambiguous, then it should be construed against the insurers or at least a trial should be provided.

The omnibus clause is contained at the end of the named insured endorsement which lists by name 53 insureds, beginning with the William Lyon Company and including among many business entities two individuals, one being Lyon. The omnibus clause reads:

### NAMED INSURED ENDORSEMENT

It is understood and agreed that item 1 of the policy declarations ["Name of Insured"] shall read as follows:

. . .

The interest of the William Lyon Company or any of its affiliated entities in any joint power agreement, joint venture, partnership or similar entity, and any entity in which any named insured owns majority interest, possesses management responsibility, or responsibility for insurance.

Holders and Lyon treat the last 17 words of the final sentence (beginning "any entity") as an independent clause; assert that Lyon is a "named insured" and possessed management or insurance responsibility for Holders, the alleged Holders partnership, or both; and conclude that Holders and the Holders partnership are each "any entity" of the type described in the last 17 words and thus are insured under the policy.

One may wonder at first glance why it is necessary to trace through the omnibus clause to Holders or the Holders partnership, since under an earlier clause of the endorsement Lyon himself is unquestionably a named insured. However, as a partner or manager of Holders, Lyon was barred from making a claim in his own right as a named insured because of the PEIC policy's sole proprietor endorsement, which contains a special limitation on coverage otherwise

available to a named individual insured. The sole proprietor endorsement reads as follows:

### INDIVIDUAL AS NAMED INSURED

It is agreed that if any named insured designated in the declaration is an individual, coverage under this policy for such individual named insured shall apply only with respect to the conduct of a business of which he is the sole proprietor.

In our view this provision excludes coverage not only for Lyon claiming directly but also for Holders, or the supposed Holders partnership, claiming through Lyon under the omnibus clause. This is PEIC's first argument in its appeals brief and we think that it is persuasive.

The parties are agreed that California law governs the interpretation of the insurance policies in this case. But there is nothing in the California precedents cited to us that relates directly to the interplay between an omnibus clause and a sole proprietor endorsement. We thus confront the language of the two provisions head-on, mindful that an insurance policy—like any other contract—is to be construed as a whole and not by reading its parts in isolation. Cal.Civ. Code § 1641; *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 10 Cal.Rptr.2d 538, 545, 833 P.2d 545, 552 (1992).

Reading the parts together, we think that a reference to "any named insured" in the omnibus clause fairly means any company or individual named in the named insured endorsement but *subject to* any other language that directly restricts the extent to which that company or individual is classified as a named insured. The sole proprietor endorsement does impose such a restriction as to Lyon: it says that even though named as an insured, he is covered "only with respect to the conduct of a business of which he is the sole proprietor." As already noted, it is for this reason that Lyon, even if personally liable for the fire, would not be directly protected as a named insured.

Appellants argue that we are not faced with a claim by Lyon in his own right but rather with a claim by "any entity"—here, Holders and the Holders partnership—in which Lyon as "any named insured" has management or insurance responsibility. Yet by virtue of the sole proprietorship endorsement, Lyon is "any named insured" only with a respect to the conduct of a business of which he is the sole proprietor. A sole proprietorship is a business form in which an individual—rather than, for example, a partnership or corporation—owns the business. *See Black's Law Dictionary*, 1392 (6th ed. 1990). No one claims that Holders or the Holders partnership fits this definition; nor is there any plausible claim that Lyon's participation in either entity was in the capacity of sole proprietor.

In sum, we think that by its language the sole proprietor endorsement-in describing the coverage for "any named insured" who is an "individual" limits other references to Lyon as "any named insured" wherever that phrase appears. Where the entity claiming through Lyon in the omnibus clause is not a sole proprietorship, and his relationship to the entity was not in his capacity as sole proprietor of a business, then that entity is not covered by the omnibus clause. And while the concept of ambiguity is not without ambiguities of its own, the policy language does not appear to us to be fuzzy or unclear on this point.

Insurance policies are commonly constructed not as a continuous narrative but, as this one illustrates, by a succession of juxtaposed clauses defining the insured, the risks covered, the extent and amount of coverage, and (typically) the various limitations or restrictions on all of these concepts. Such a document not only invites but, like some complicated Christmas toy, virtually demands that different parts be inserted into one another according to the instructions. Here, the fact that the sole proprietor endorsement and the omnibus clause pivot on the same words ("any named insured") makes it especially easy to read them together.

Appellants respond by asserting that the sole proprietor endorsement imposes no limitation on coverage for any entity other than an individual because the endorsement itself purports to restrict "coverage under this policy *for such individual named insured* ..." The "function and purpose" of the endorse-

ment, appellants say, was to limit coverage to business, as opposed to personal, risks. Finally, they say that PEIC has not previously relied on the sole proprietor endorsement as it now does and has therefore "waived" this interpretation as a ground for sustaining the judgment below.

We think that the underscored language is entirely consistent with reading the limitation to apply not only to "such individual named insured" but also any entity claiming *through* such a named insured based on its relationship with the named insured: since Lyon could not claim coverage, Holders cannot claim coverage derivatively through Lyon. As for the purpose and function argument, the endorsement on its face does not draw a personal versus business distinction; it restricts claims to one specific business capacity in which an individual may act, namely, as a sole proprietor, while excluding other possibilities (*e.g.*, partner, manager of a jointly owned company) that might otherwise be helpful to appellants' claims.

As for waiver, appellants confine themselves to two sentences in their reply brief, offer no details, and can fairly be said to have waived the waiver argument themselves. *See Ryan v. Royal Ins. Co.*, 916 F.2d 731, 734 (1st Cir.1990). Even if they had not, the argument on which we rest is closely related to, although not identical with, the ground on which the district court disposed of the claim against FSIC. Under these circumstances, it is somewhat difficult to imagine that Holders or Lyon was greatly surprised to see the argument as the first one in PEIC's appellate brief.

■ 2. The FSIC policy presents overlapping but not identical questions relating only to Lyon. The FSIC policy itself does not contain the omnibus endorsement, so to establish coverage, Lyon points to a different endorsement relating to joint ventures. According to Lyon, "by its terms" this endorsement "provides coverage 'in the event of any occurrence caused by or arising out of any joint venture ... or partnership (hereinafter joint venture) in which *the insured* has an interest.'" Therefore, Lyon says, the alleged Holders partnership is entitled to coverage.

This argument rests on a selective, and we think misleading, quotation from the joint venture endorsement. Its opening paragraph reads in full:

It is agreed tjay [sic] in the event of any occurrence caused by or arising out of any joint venture, co-venture, joint lease, joint operating agreement or partnership (hereinafter joint venture) in which the insured has an interest, the limit of liability of the company under this policy shall be limited to the product of:

There follows a formula designed, broadly speaking, to limit the insurer's liability to the share of the partner who is a named insured. On its face, this endorsement is designed to limit liability and not to extend coverage to any partnership not otherwise covered (a number of partnerships are named insureds).

Thus, the claim that the joint venture endorsement extends protection to any partnership in which Lyon holds an interest appears to be mistaken. But this does not end the matter because Lyon is a named insured under the policy and is entitled to claim in his own right as a partner (assuming that there was a partnership and subject to the formula's limitation), unless the FSIC policy otherwise restricts Lyon's own protection. The district court found that it did and we agree.

■ Although the FSIC policy itself does not contain the sole proprietor endorsement contained in the PEIC policy, it does have a provision, apparently common in excess liability policies, providing that "[t]his policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions and limitations of and shall follow the underlying policies in all respects, including changes by endorsement." The policy issued by the lead excess insurer, National Union, contains a sole proprietor endorsement (as does the PEIC policy).

The district court held that the sole proprietor endorsement was adopted by the FSIC policy through the "subject to" provision just quoted, and precluded coverage for the Holders partnership. Lyon does not dispute that the sole proprietor endorsement would be decisive if it applied—manifestly, it would

bar his own claim as a partner—but he argues that the sole proprietor endorsement is not incorporated because it is inconsistent with the coverage extended by the FSIC policy. He points specifically to the joint venture endorsement which (allegedly) "*affirmatively* grants coverage to William Lyon in his capacity as a partner or joint venturer...."

This conflict is wholly imaginary. The joint venture endorsement does not grant coverage to William Lyon in his capacity as partner; by its terms, it does not grant coverage to *any* partner or partnership but rather (as already noted) restricts the extent of the protection available to otherwise covered partnerships (*e.g.*, partnerships listed as named insureds). The alleged Holders partnership is not a named insured, nor has Lyon suggested any other basis—apart from the joint venture endorsement—by which the partnership might be covered.

The result would not change even if the joint venture endorsement were read affirmatively to extend coverage under the FSIC policy to all partnerships where a named insured was a partner. For reasons already indicated in our discussion of the PEIC policy, we think that Lyon as a named insured would still be restricted by the sole proprietor endorsement (incorporated by the "subject to" endorsement); and a partnership claiming through him would impermissibly be seeking to take advantage of his status as a partner, a status in which he has no protection.

Once again, there would be no irreconcilable conflict between the joint venture and sole proprietor endorsements. The joint venture endorsement would continue to protect partnerships where the named insured, whose partner status was used as the basis for covering the partnership, was insured without limitation as to capacity. That would be true under the FSIC policy of all insureds (*e.g.*, corporations) except individuals. The restriction of one provision by another is not automatically a conflict where both can continue to perform a function. *See* Cal. Civil Code §§ 1641, 1652.

 To conclude as to coverage claims: based on their language, neither the PEIC nor the FSIC policy extend liability coverage for the fire to Holders, Lyon or the alleged Holders partnership. One might argue about whether the language can be described as "plain," since a jig-saw puzzle of provisions has to be solved to determine the scope of the policies. But the fact remains that, when the provisions are properly juxtaposed, their *language* excludes the claims here made.

Language is the baseline for interpretation of an insurance policy or other legal document. But judges—like everyone else—are more comfortable with their readings where purpose is evident and congruent with language. It is hard to say that "purpose" is completely clear in this case. Neither side has tried seriously to illuminate the purpose of the various provisions or how their rationales might interact. We are therefore left with the words, and appellants have given us no affirmative reason to disregard the literal words of the policies.

Although we do not reach the insurers' other arguments against liability, one of them is worth a brief mention, if only to make clear that a literal reading of policy language produces no obvious injustice. The pertinent documents as a whole—most importantly, the application papers and the policies—convey the surface impression that Lyon was insuring his construction business and a bevy of related enterprises which owned property in a number of states, not including Puerto Rico. There is no indication in the papers that a hotel in Puerto Rico existed or was in any way to be the subject of either policy; indeed, an entirely separate insurance structure existed to cover Lyon's and the Dupont Plaza entities' hotel operations.

If Lyon had owned the hotel as a sole proprietorship, interesting problems might be posed. He would probably say that the language of the policy squarely covered him as an individual named insured operating as a sole proprietor; and the insurers would say—as indeed they do in their alternative defense on appeal—that the applications were materially misleading in failing to furnish information about the hotel. How this

controversy would be resolved is a matter of conjecture.

Yet if Lyon did prevail—he says, for example, that the applications did not seek information about his investments in the hotel—one suspects that the recovery would be something of a windfall. Sometimes valid general provisions in contracts do produce recoveries that no one quite envisioned. In this instance, at worst, the general provisions appear to have forestalled a recovery that no one quite envisioned.

### III.

We turn now to damages. As noted earlier, both insurers paid Lyon up to their policy limits but subject to a reservation of rights. After granting summary judgment in favor of the insurers, the district court under California law awarded the insurers pre-judgment interest on the funds they had advanced, at the rate of ten percent, to be paid by Lyon. Lyon now argues that the district court erred in not applying Puerto Rico law on pre-judgment interest, where an award of pre-judgment interest depends on a showing of obstinacy.

■ We review *de novo* a district court's choice-of-law determination. *Putnam Resources v. Pateman,* 958 F.2d 448, 466 (1st Cir.1992). In California, pre-judgment interest is awarded virtually as a matter of right to a prevailing party as delay damages to reflect the time value of money. *See* Cal.Civ. Code § 3287; *McConnell v. Pacific Mut. Life Ins. Co. of Cal.,* 205 Cal.App.2d 469, 24 Cal.Rptr. 5, 11 (1962). In Puerto Rico, pre-judgment interest is imposed as a penalty when the losing party was obstinate. *See* P.R. Laws Ann. tit. 32, app. III, rule 44.3; *Reyes v. Banco Santander de P.R., N.A.,* 583 F.Supp. 1444, 1446 (D.P.R.1984).

■ Because the district court here was sitting in diversity, it was required to follow Puerto Rico's choice-of-law rules. Puerto Rico applies a "dominant contacts" test in contract actions. *In re San Juan Dupont Plaza Hotel Fire Litig.,* 745 F.Supp. 79, 82 (D.P.R.1990). Under that test, the law that applies is the law of the jurisdiction with the most significant contacts to the disputed issue, with due consideration given to the policies at stake. *Id.* Although the factors do not all point one way, we agree with the district court that California has the most significant contacts with the issue of pre-judgment interest.

■ In substance, pre-judgment interest is sought here in connection with the interpretation and enforcement of a contract—specifically two insurance policies—indisputably governed by California law. The policies were applied for, negotiated, issued and paid for in California; and the William Lyon Company and Lyon himself were based there. Puerto Rico, by contrast, has the main connection with the fire but no contacts with the policies except for the fortuity that insurance coverage was litigated in the same case as liability for the fire.[2]

So far as the California pre-judgment interest rule aims at reflecting the time value of money and making the deprived litigant whole, California's interest applies with full force in this case. The fact that the insurance companies paid first and then sought reimbursement is happenstance; the dispute still concerns liability under California policies. To the extent that California wants its contracting parties to pay (here, to repay) obligations promptly, again applying California law serves California interests.

Of course, requiring pre-judgment interest may have a secondary purpose—perhaps more than secondary in Puerto Rico's case—since it discourages frivolous defenses. Defendants who owe debts are less likely to stall and litigate, thus benefitting the courts and the public. Puerto Rico's use of an obstinacy test may suggest that it is less

---

**2.** PEIC and FSIC had earlier sought to litigate their coverage in a declaratory judgment action in California but the court dismissed the action in light of the omnibus Puerto Rico litigation. Appellants have asked us to take judicial notice of a supposed finding in the California action that Puerto Rico has the most important contacts with this action. A review of the transcript shows that the California judge simply determined that a multiplicity of proceedings should be avoided. The judge did not undertake a choice of law analysis on any issue, let alone the one with which we are concerned.

concerned with making the creditor whole than with discouraging meritless litigation in its courts. Even so, in this case there is no conflict between Puerto Rico's interest and the award to the insurers.

Here, the award of pre-judgment interest does not frustrate Puerto Rico's desire to discourage obstinate litigation; at most, pre-judgment interest has been awarded, for different purposes, in a case where the debtor may not have been obstinate. Since Puerto Rico's interests are not threatened, there is no reason to engage in whatever balancing might be required if California and Puerto Rico interests actually conflicted. *See, e.g., Fojo v. American Express Co.,* 554 F.Supp. 1199, 1201 (D.P.R.1983).

*Affirmed.*