**In re SAN JUAN DUPONT PLAZA HOTEL FIRE LITIGATION.**

**AMERICAN INTERNATIONAL INSURANCE COMPANY OF PUERTO RICO and Insurance Company of the State of Pennsylvania, Cross–Claimants, Appellants,**

v.

**AMERICAN NATIONAL FIRE INSURANCE COMPANY, Cross–Defendant, Appellee.**

No. 93–2352.

United States Court of Appeals, First Circuit.

Heard Oct. 7, 1994.

Decided Jan. 27, 1995.

Robert S. Frank, Jr., with whom Mark D. Cahill, Bret A. Fausett, Jeffrey A. Levinson, Choate, Hall & Stewart, Boston, MA, William R. Kardaras, Louise A. Kelleher and Cooper, Brown, Kardaras & Scharf, New York City, were on briefs, for American Intern. Ins. Co. of Puerto Rico and Ins. Co. of the State of Pennsylvania.

Kent R. Keller, with whom William A. Kurlander, John C. Holmes, J. Steven Bingman and Barger & Wolen, Los Angeles, CA, were on brief, for American Nat. Fire Ins. Co.

Before BOUDIN, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

BOUDIN, Circuit Judge.

This appeal is a companion to *Lyon v. Pacific Employees Insurance Co.*, 45 F.3d 569, which is decided today in a separate opinion. Here, appellants American International Insurance Company of Puerto Rico ("AIIC") and Insurance Company of the State of Pennsylvania ("ISOP") challenge the district court's *sua sponte* grant of summary judgment for American National Fire Insurance Company ("ANFIC") on AIIC/ISOP's cross-claim for defense costs. The appellants contend that the district court's action in granting summary judgment *sua sponte* was procedurally flawed because they had no notice and no opportunity to present a defense.

AIIC and ISOP were the primary general liability insurers for the Dupont Plaza and related entities when the hotel fire occurred on December 31, 1986. Their insureds included the San Juan Dupont Plaza Corporation, Holders Capital Corporation ("Holders"), Hotel Systems International ("HSI"), Hotel Equipment Leasing Associates ("HELA") and William Lyon, in his capacity as a shareholder and director of the various Dupont Plaza entities.[1] As the primary insurers for the hotel, AIIC and ISOP financed

1. Holders, in which Lyon and others had an ownership interest, was the holding company for various hotel operations. HSI, a subsidiary of Holders, owned and operated the Dupont Plaza. HELA is a limited partnership, in which Lyon was a limited partner, that leased hotel equipment to various hotels including the Dupont Plaza.

the hotel's defense of the massive fire litigation, expending over $40,000,000 in defense costs.

At the time of the fire, ANFIC was the primary general liability insurer for the William Lyon Company, a California residential construction and development company, and related entities, including William Lyon individually. As *Lyon* explains in detail, Pacific Employers Insurance Company ("PEIC") and First State Insurance Company ("FSIC") were among several excess insurers for the William Lyon Company and its related insureds at the time of the fire, and their coverage provided additional layers of protection over and above ANFIC's primary coverage.

In general, as is typical in excess insurance cases, PEIC and FSIC provided coverage similar to ANFIC's primary coverage. Like the PEIC and FSIC policies, the ANFIC policy's only direct link to the Dupont Plaza was Lyon's status as a named individual insured; no Dupont Plaza entity was listed as an insured, and no listed insured other than Lyon was involved in the hotel business. In addition, like the PEIC and FSIC policies, the ANFIC policy limited Lyon's individual coverage to the conduct of businesses of which he was the "sole proprietor."

Soon after the fire-injury suits began, Lyon and Holders tendered their defenses to ANFIC. ANFIC agreed to defend Lyon, but reserved its rights to deny coverage on the ground that Lyon had not been sued in an insured capacity. ANFIC declined to defend Holders on the basis that it was not an insured. In April 1988, ANFIC filed a declaratory judgment action in a California federal court against Lyon and others to resolve the coverage issues. This action was subsequently consolidated with the multi-district litigation in Puerto Rico and eventually dismissed without prejudice.

AIIC, ISOP and ANFIC were all eventually joined as defendants in the first phase of the fire-injury litigation—AIIC and ISOP in September 1987 and ANFIC in January 1989. In February 1989, AIIC and ISOP filed a cross-claim against ANFIC, seeking contribution for their costs for defending Lyon and the other Dupont Plaza entities

related to him. In May 1989, when phase I was resolved by settlement, AIIC, ISOP and ANFIC all contributed their coverage limits as damages to the victims' settlement fund— a combined $1 million for AIIC and ISOP and $1 million for ANFIC—with ANFIC expressly reserving its rights later to dispute its obligation to contribute to defense costs.

In phase III of the litigation, the district court undertook the unenviable task of sorting out the contractual liabilities of the various insurers. On December 7, 1992, in Order No. 469, the district court ruled that the PEIC and FSIC policies did not cover the fire-related obligations of Lyon or any of the Dupont Plaza entities connected to him, a result that we have today affirmed in *Lyon*. Since its policy largely paralleled the PEIC and FSIC policies, ANFIC was encouraged by Order No. 469 to move for summary judgment on AIIC/ISOP's cross-claim for defense costs.

Because the district court's deadline for the filing of pre-trial motions had long since passed, ANFIC was first required to obtain the court's permission to file the motion out of time. On February 25, 1993, ANFIC filed a twelve-page motion seeking leave to file for summary judgment, predicating its request on the identity of the issues decided in Order No. 469. The motion outlined the substance of ANFIC's proposed summary judgment arguments and presented procedural arguments why the court should allow the belated summary judgment filing. ANFIC also requested that the court establish an appropriate briefing schedule for summary judgment filings.

On March 9, 1993, AIIC and ISOP filed a seven-page opposition to ANFIC's motion for leave, setting forth both procedural and substantive grounds for denial. The opposition briefly urged differences between a primary insurer's defense obligation and an excess insurer's coverage obligation, hoping to distinguish AIIC/ISOP's contribution claim against ANFIC from the liability coverage claims asserted by Holders and Lyon against PEIC and FSIC. The opposition did not contain any analysis or discussion of California law on the duty to defend.

In the event the court granted ANFIC's motion for leave to file, AIIC and ISOP requested similar permission to file a cross-motion for summary judgment to affirm ANFIC's duty to contribute to Lyon's defense. AIIC and ISOP also filed a motion seeking production of ANFIC's underwriting files, claiming that those files contained admissions relating to ANFIC's obligation to defend Lyon. Although the motion did not identify the supposed admissions, on appeal AIIC and ISOP suggest only that the files might help establish that ANFIC was responsible for including an allegedly ambiguous omnibus clause in its policy.

On September 2, 1993, the district court entered Order No. 495, granting summary judgment for ANFIC on AIIC/ISOP's cross-claim for defense costs. Treating ANFIC's motion for leave to file as a request for summary judgment, the district court ruled that ANFIC's primary policy, like the parallel PEIC and FSIC policies, did not cover Lyon or any of the Dupont Plaza entities. Because AIIC/ISOP's cross-claim was "distinct and separate from any remaining claims" in the fire litigation, the court entered Final Judgment No. 12 dismissing the cross-claim in its entirety. The court also dismissed AIIC/ISOP's request for production of documents as moot. On October 8, 1993, in Order No. 506, the court denied AIIC/ISOP's timely motion to reconsider, and this appeal followed.

As a preliminary matter, ANFIC argues that this appeal is limited to a review of Order No. 506, which is the district court's denial of the motion for reconsideration, and that our inquiry is therefore for abuse of discretion only. *See, e.g., Mariani–Giron v. Acevedo–Ruiz,* 945 F.2d 1, 3 (1st Cir.1991). ANFIC points to the fact that appellants' notice of appeal is entitled, "Notice of Appeal to the First Circuit Court of Appeals From Order No. 506 of District Court Judge Raymond L. Acosta Dated October 8, 1993." AIIC and ISOP contend Order No. 495, the district court's summary judgment ruling, is also before this court.

■ An appeal from the denial of a motion for reconsideration is not an appeal from the underlying judgment. *LeBlanc v. Great*

*American Ins. Co.,* 6 F.3d 836, 839 (1st Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994) (collecting cases). But we have allowed "a timely appeal from the denial of a timely Rule 59(e) motion to serve as notice of an appeal from the underlying judgment in cases where the appellant's intent to appeal from the judgment is clear." *Id.* A mistake in designating a judgment in the notice of appeal will not ordinarily result in a loss of the appeal "as long as the intent to appeal from a specific judgment can be fairly inferred from the notice, and appellee is not misled by the mistake." *Kelly v. United States,* 789 F.2d 94, 96 n. 3 (1st Cir.1990).

■ AIIC/ISOP's notice of appeal manifests AIIC/ISOP's intent to appeal the summary judgment ruling. The body of the notice referred to Order No. 469 and Final Judgment No. 12. The notice, filed on November 1, 1993, following the district court's denial of the motion to reconsider on October 8, 1993, was timely for an appeal of Order No. 469 and Final Judgment No. 12. *See* Fed.R.App. 4(a). The title of the notice, which refers only to the motion to reconsider, is not dispositive, and there is no claim that ANFIC was prejudiced in any way by the mislabeled notice. *See Kotler v. American Tobacco Co.,* 981 F.2d 7, 11–12 (1st Cir.1992).

■ We turn now to the district court's decision to grant summary judgment in favor of ANFIC. When the district court granted summary judgment, there was no formal motion for summary judgment pending before it; it had only ANFIC motion requesting leave to file and AIIC/ISOP opposition. These filings did outline the substance of the parties' respective positions on the merits. Still, in formal terms, the district court's ruling was "the functional equivalent of a *sua sponte* grant of summary judgment." *Stella v. Town of Tewksbury,* 4 F.3d 53, 55 (1st Cir.1993).

In *Stella,* we recognized that a district court can grant summary judgment on its own initiative so long as the parties' procedural interests are protected. 4 F.3d at 55. In particular, discovery must be far enough examined to let the court accurately decide whether there are genuine issues of material

fact and to make the parties aware of the evidence that they can adduce. *Id.* Further, the litigants need notice from the district court of its intention to consider a grant of summary judgment, so that the litigants can *present* their arguments and their evidence. *Id.*

In this case, there was on the one hand no notice that the district court was considering a grant of summary judgment, for the only issue pending was whether the court would grant permission to file such a motion. On the other hand, the parties in the course of presenting their positions on the latter issue also revealed much of what they had to say on the substance of the merits of summary judgment. The matter is further complicated because AIIC/ISOP also took the position that, before responding to a summary judgment motion, they needed additional discovery in order to illuminate the question who drafted the omnibus clause in the ANFIC policy.

If we were completely certain that the merits of the summary judgment issue had been *fully* presented to the district court, it might be reasonable to conclude either that the essence of the *Stella* notice requirement had been satisfied or that the failure to satisfy it was harmless. *See Stella,* 4 F.3d at 56 n. 4. Further, our own opinion today in the companion case significantly limits the arguments left open to AIIC/ISOP and also appears to render its discovery request irrelevant. But there does remain unresolved a significant legal issue, not squarely addressed by the district court, so we are persuaded that a remand is the most appropriate solution.

Broadly speaking, as to coverage for liability, ANFIC's position appears to be materially identical to that of PEIC and FSIC decided in the companion *Lyon* case. The reasons we have given in that case for exculpating PEIC and FSIC make clear that claims of liability coverage by Lyon or Holders against ANFIC would also fail. The sole proprietor endorsement appears in the ANFIC policy, and we have held in *Lyon* that this endorsement limits claims under the omnibus clause without regard to who drafted the provisions. Yet, there is a further argument, vigorously

pressed by AIIC/ISOP, that the duty to defend under California law is broader than the duty to indemnify and applies wherever a liability coverage claim has "potential" validity even though it ultimately fails.

There is apparently no dispute that under California law the duty to defend is broader than the duty to indemnify. *Horace Mann Ins. Co. v. Barbara B.,* 4 Cal. 4th 1076, 17 Cal.Rptr.2d 210, 213, 846 P.2d 792, 795 (1993). AIIC/ISOP say that wherever there is potential coverage under a policy—by potential they appear to mean "arguable"—the duty to defend exists. All parties also seem to assume that, if there was a duty on the part of ANFIC to defend at the outset, then it is liable for contribution to the defense costs even if the potential claim of liability coverage is later resolved in the negative. *Montrose Chem. Corp. of Cal. v. Superior Court,* 6 Cal. 4th 287, 24 Cal.Rptr.2d 467, 471, 861 P.2d 1153, 1157 (1973); *Continental Casualty Co. v. Zurich Ins. Co.,* 57 Cal.2d 27, 17 Cal.Rptr. 12, 18, 366 P.2d 455, 461 (1961).

ANFIC, however, says that the duty to defend in arguable cases does not extend to those in which the dispute is about whether the putative insured is actually insured under the policy; and ANFIC cites California cases that it thinks support its position. *Wint v. Fidelity & Cas. Co.,* 9 Cal.3d 257, 107 Cal. Rptr. 175, 180, 507 P.2d 1383, 1388 (1973); *McLaughlin v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 23 Cal.App.4th 1132, 29 Cal.Rptr.2d 559, 570 (1994). ANFIC also seems to think that it matters that (in its view) the burden of proof to establish that an individual or company is protected by a policy is upon the claimant, whereas proving that a restriction or exclusion applies is upon the insurer.

We are doubtful whether this supposed difference in burden of proof matters in a case in which the facts are not in dispute, but the extent of the duty to defend under California law may be a debatable point. While law on the duty to defend in potential coverage cases might be limited in the fashion that ANFIC suggests, it is also possible that the duty to defend exists in any case in which there is arguably coverage, regardless of what policy language is in dispute. In the alternative, perhaps the duty to defend exists at least where the defendant in the underly-

ing liability litigation is a named insured, and the dispute as to coverage turns on whether the insured is sued in a covered "capacity."

Assuming there is a duty to defend in arguable cases and that ANFIC's distinction between types of disputes does not wash, the question would remain whether coverage here was arguable. While our reading of the policy language in *Lyon* may somewhat impair AIIC/ISOP's position, nevertheless under California law the duty to defend is evaluated in terms of likelihoods at the *outset* of litigation. *See, e.g., Horace Mann,* 17 Cal.Rptr.2d at 213, 846 P.2d at 795. A court's later conclusion that a provision should be read one way, and that extrinsic evidence is beside the point, does not necessarily mean that the contrary view was inarguable. The standard of what is arguable is itself a matter of California law.

Although the issues as we have posed them are essentially legal ones, there are numerous reasons why a remand is appropriate so the district court can consider the matter in the first instance. Discovery aside, it is not completely clear that the parties have said everything they can about the "merits," since much of the briefing in this court has been directed to the procedural propriety of summary judgment and not to the merits. Since the reach of California law on the duty to defend is disputed, our concern that the parties may not have mustered all of their merits arguments and citations is not a formality.

Further, we are not wholly certain that our narrowing of the issues is justified. Although our companion opinion in *Lyon* probably eliminates any basis for concern about who drafted the omnibus clause in the AN-FIC policy, none of the litigants has had an opportunity to address this issue in light of *Lyon.* Similarly, we are skeptical that AN-FIC's willingness to assume Lyon's defense in the underlying litigation is much of an admission vis-a-vis the AIIC/ISOP claim; as ANFIC points out, it could be subject to harsh penalties under California law if it breached the duty to defend. Still, the presence of this kind of dangling dispute shows why the wiser course is to remand.

Finally, although we are reluctant to prolong what has been extraordinarily burdensome litigation, no judge on this panel compares to the presiding district judge in his familiarity with the facts, the procedural history, and the possible ramifications of California law in relation to the dispute. The district court did not in its grant of summary judgment discuss the asserted distinctions between the duty to indemnify and a duty to defend or their connection to the claims of contribution pressed by AIIC/ISOP in this case. This is one more reason why a remand is the wiser outcome.

On remand, we think that the proper course would be for the district court to invite ANFIC to file a formal motion for summary judgment and to allow AIIC/ISOP to file papers in opposition, or a cross-motion in their own favor, or both. If any party wishes to claim that additional discovery is necessary, it is free to do so. As already noted, we have not discerned any obvious factual issues requiring further discovery but the district court is free to determine otherwise after the parties have had an opportunity to present their positions.

The judgment is *vacated* and the case *remanded* for further proceedings in accordance with this opinion.