USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 96-2190 ERIC DELGADO-BIAGGI, ET AL., Plaintiffs, Appellants, v. AIR TRANSPORT LOCAL 501, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Selya and Stahl, Circuit Judges. ______________ ____________________ John Ward Llambias for appellants. __________________ Malcolm A. Goldstein, with whom Joel C. Glanstein, Manuel Porro- ____________________ _________________ ______________ Vizcarra, O'Donnell, Schwartz, Glanstein & Rosen, and Lopez-Lay ________ __________________________________________ _________ Vizcarra & Porro, were on brief for appellees. ________________ ____________________ May 5, 1997 ____________________ STAHL, Circuit Judge. Plaintiff-appellant Eric STAHL, Circuit Judge. _____________ Delgado-Biaggi1 brought an action against defendants- appellees Air Transport Local 501 ("Local 501") and the Transport Workers Union of America, AFL-CIO ("TWU") (collectively, "the Union") under the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. 401 et __ seq., claiming the denial of due process and the arbitrary ____ and discriminatory removal of his shop steward position. The district court granted summary judgment in favor of the Union, from which Delgado-Biaggi now appeals. Because the district court's failure to comply with Federal Rule of Civil Procedure 56(c) denied Delgado-Biaggi a meaningful opportunity to oppose the Union's summary judgment motion, we vacate the judgment and remand for further proceedings. I. I. __ Background and Prior Proceedings Background and Prior Proceedings ________________________________ We recite the pertinent facts in the light most favorable to Delgado-Biaggi, the party opposing summary judgment. See Hachikian v. F.D.I.C., 96 F.3d 502, 504 (1st ___ _________ ________ Cir. 1996). Delgado-Biaggi joined the Local 501 chapter of the TWU in 1991 when he began working for American Airlines as a baggage handler. One year later, Delgado-Biaggi was elected  ____________________ 1. Delgado-Biaggi's wife, Nilda Fernandez-Zayas, and their conjugal partnership are also plaintiffs. For simplicity, we refer only to Eric Delgado-Biaggi and his claims. -2- 2 to a union shop-steward position for the bag room, second shift.2 In September 1993, Delgado-Biaggi bid for a first shift position, which he obtained because of his seniority. In October 1993, shortly after Delgado-Biaggi changed work shifts, the chairman of Local 501 handed him a letter from Local 501's Executive Vice-President, William Tlasek, which purported to acknowledge Delgado-Biaggi's "resignation" of his shop steward's position. In November 1993, Delgado-Biaggi responded to Tlasek by letter, asserting that he had not resigned as shop steward and that he had a right to remain in office unless he was duly removed pursuant to Local 501's bylaws. Tlasek, in turn, responded that Delgado-Biaggi's shift-change automatically effected his resignation under Article VII(a) of the union bylaws, which provides: "A Shop Steward who leaves the unit or shift he was elected by, will continue to serve at the discretion of the Executive Board." Dissatisfied with that response, Delgado-Biaggi complained again to Tlasek by letter dated January 14, 1994, also to no avail. Not willing to concede the issue, he then retained an attorney who, in March 1994, wrote a letter to Local 501 claiming denial of due process in the removal of Delgado-Biaggi as steward. The leadership of Local 501  ____________________ 2. Shop stewards are union representatives who personally handle problems that their fellow employees raise concerning management. -3- 3 remained unmoved. In April 1994, Delgado-Biaggi's counsel attempted to appeal by letter to TWU's International Executive Council. The Council's stated reason for rejecting the appeal was Delgado-Biaggi's failure to personally file the letter. Delgado-Biaggi did not resubmit his appeal, but instead commenced this litigation in June 1994. On June 13, 1996, after a desultory beginning to the prosecution of this case, the district court set a trial date of July 1, 1996. On June 17, the Union responded to the setting of the trial date by filing a motion for summary judgment.3 On Friday, June 28, the parties met with the district court judge in chambers for a non-scheduled conference. During this meeting, Delgado-Biaggi announced his intention to oppose the Union's motion for summary judgment with oral and documentary evidence on the following Monday, July 1, the scheduled first day of trial. The following Monday morning, before Delgado-Biaggi had an opportunity to present his opposing evidence, the parties were handed an opinion and order granting the Union's  ____________________ 3. We note that the Union submitted the June 17, 1996 summary judgment motion well after the court's November 1995 deadline for the filing of the dispositive motion. The court allowed the untimely motion although, as the record reflects, the Union did not first seek and obtain leave to file the motion out of time. See In re San Juan Dupont Plaza Hotel ___ __________________________________ Fire Litigation, 45 F.3d 564, 566 (1st Cir. 1995) (explaining _______________ that summary judgment proponent must obtain permission to file motion out of time where filing deadline "had long since passed"). -4- 4 motion for summary judgment. The terse opinion stated that "[t]he union's actions in [construing Delgado-Biaggi's shift change as a resignation of shop stewardship] were authorized by its by-laws, which make perfect sense, since, of course, a shop steward is of little use if he does not work the shift he represents." The order concluded that "none of the union's conduct violates the rights protected under 29 U.S.C. 411." The court did not entertain oral argument on the motion. Thereafter, Delgado-Biaggi filed a motion to reconsider along with a sworn declaration from Jorge Brignoni, a former Chairman of Local 501. The declaration stated that union stewardships are "never" withdrawn or deemed resigned as a result of a shift change, and that [i]t has never been the practice in Puerto Rico to consider a change of shift as an automatic resignation . . . . The only case where such an interpretation has been attempted is when Mr. Eric Delgado was unilaterally removed by the then Chairman Mr. Rafael Perez. Delgado-Biaggi further submitted an excerpt from the deposition of Jose Rodriguez, a Board member, who testified that the Executive Board had never removed Delgado-Biaggi from his shop steward position. The district court denied the motion to reconsider. This appeal followed. II. II. ___ Discussion Discussion __________ -5- 5 On appeal, Delgado-Biaggi argues that the district court prematurely granted summary judgment and that, given the proper opportunity to respond to the Union's motion, he would have produced evidence sufficient to preclude summary judgment. The Union offers a host of arguments in favor of upholding the court's disposition of the action and insists that "the district court handled the case properly." Federal Rule of Civil Procedure 56(c) provides that a summary judgment motion "shall be served at least 10 days before the time fixed for the hearing." Fed. R. Civ. P. 56(c). We have interpreted Rule 56(c) to allow an adverse party at least ten days to respond to a motion for summary judgment. See Stella v. Town of Tewksbury, 4 F.3d 53, 55 ___ ______ __________________ (1st Cir. 1993) ("[S]ummary judgment targets should be secure in the knowledge that they will have at least ten days in which to formulate and prepare their best opposition."); Melanson v. Caribou Reefers, Ltd., 667 F.2d 213, 214 (1st ________ ______________________ Cir. 1981). Indeed, "the purpose of Rule 56(c) is to allow a party to have a meaningful opportunity to challenge a summary judgment motion." Cia. Petrolera Caribe, Inc. v. Arco _____________________________ ____ Caribbean, Inc., 754 F.2d 404, 409 (1st Cir. 1985) (internal _______________ quotation marks and citation omitted).4  ____________________ 4. We note that, while Rule 56(c) refers to a "hearing" in relation to the ten day proviso, the rule does not require oral argument in connection with the motion. See Cia. ___ ____ Petrolera Caribe, 754 F.2d at 411 (explaining that the motion ________________ may be "heard" on the papers). -6- 6 The Union filed its motion for summary judgment on Monday, June 17, 1996. Excluding the day on which the motion was filed as well as the intervening Saturday and Sunday, see ___ Fed. R. Civ. P. 6(a), the ten-day requirement afforded Delgado-Biaggi until the end of the business day Monday, July 1, to submit his opposition. By ruling on the morning of July 1, before Delgado-Biaggi could present his opposing evidence, the district court denied him the requisite opportunity to contest the motion. As we previously have admonished, the "[ten day] notice requirement is not merely window dressing" and the "proper province" of summary judgment is "to weed out claims that do not warrant trial rather than simply to clear a court's docket." Stella, 4 ______ F.3d at 55. We find that the court erred when it granted summary judgment before Delgado-Biaggi exhausted his opportunity to challenge the Union's motion.5 The Union overlooks the procedural flaws accompanying the entry of summary judgment and endeavors to persuade us that, in any event, the record reflects no genuine issue of material fact. In Stella, we "decline[d] to ______ delve into the substantive aspects of plaintiffs' cause of action" because "leapfrogging to the merits would display  ____________________ 5. The error is somewhat amplified by the undisputed fact that, during the June 28 chambers conference, Delgado-Biaggi notified the district court that he would submit his opposing evidence the following Monday, July 1. -7- 7 much the same disregard for established protocol that marred the district court's performance." 4 F.3d at 55. Assuming harmless error jurisprudence applied in such cases, we noted that the peculiar procedural regime the district court employed in that case thwarted any such analysis. See id. at ___ ___ 56 n.4. We acknowledge that this case does not present the extreme procedural shortcomings involved in Stella. See id. ______ ___ ___ at 54 (reversing summary judgment where, on first day of trial, judge directed defendants to move for summary judgment and afforded plaintiffs thirty minutes to prepare for argument).6 The district court's failure to comply with Rule 56(c), however, necessitates that we afford Delgado-Biaggi "every latitude to show that [the Union] was not entitled to summary judgment." Melanson, 667 F.2d at 214. Assuming ________ arguendo that harmless error analysis applies to Rule 56(c) ________ infirmities, we cannot say that the court's noncompliance with the ten-day notice requirement was harmless. The sworn statements submitted with Delgado- Biaggi's motion to reconsider comprise evidence that Local 501 never previously considered a shift-change an automatic  ____________________ 6. Although we construed the district court's proceedings in Stella as involving a sua sponte grant of summary judgment, ______ ___ ______ our observations concerning Rule 56(c)'s requirements were not limited to that summary judgment subset. See 4 F.3d at ___ 55; see also Berkovitz v. Home Box Office, Inc., 89 F.3d 24, ___ ____ _________ _____________________ 29-30 (1st Cir. 1996). -8- 8 resignation of a shop steward's position and that, in any event, the Executive Board never exercised its discretion within the meaning of Article VII(a) to terminate Delgado- Biaggi's stewardship. Indeed, the Union conceded at oral argument before us that there was no evidence in the record to establish that the Board had met to exercise its discretion.7 This undisputed fact undermines the court's crucial findings in its summary judgment order and sufficiently raises the question of a genuine issue of material fact. Thus, we cannot view the flawed proceedings below as involving harmless error. Furthermore, by the Union's own reasoning, its contention that Delgado-Biaggi fails to state a claim under the LMRDA depends on the Executive Board's powers and, ultimately, the disputed question whether the Board met to exercise its discretion. The Union's other arguments also raise significant issues neither fully presented nor squarely addressed below.8 See In re San Juan Dupont Plaza Hotel Fire ___ ______________________________________  ____________________ 7. Without deciding the issue, we note that the language of Article VII(a) appears to contemplate the uninterrupted service of a shop steward who changes shifts, absent some action by the Executive Board. 8. For example, the Union argues that Delgado-Biaggi failed "to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within [the union]" before filing his action. 29 U.S.C. 411(a)(4). This argument potentially requires factbound determinations regarding the "reasonableness" of the hearing procedures and the precise event that triggered the four month period. The district court never reached this issue and, given the undeveloped -9- 9 Litigation, 45 F.3d 564, 567, 568 (1st Cir. 1995) (finding __________ harmful error where appellate court was not "completely certain that the merits of the summary judgment issue had been fully presented to the district court" and where "a significant legal issue, not squarely addressed by the district court" remained unresolved due to court's abbreviated summary judgment proceedings). We are loath to endorse the district court's disregard for Rule 56(c) protocol by reaching the merits of these undeveloped matters. See Stella, 4 F.3d at 55. ___ ______ We conclude that, largely because of the absence of evidence establishing Executive Board action, as well as the procedural failure below, remand for further proceedings is the appropriate solution. See In re San Juan Dupont Plaza ___ ____________________________ Hotel Fire Litigation, 45 F.3d at 568. _____________________ III. III. ____ Conclusion Conclusion __________ For the foregoing reasons, we vacate the judgment ______ of the district court and remand the case for proceedings ______ consistent with this opinion. Costs to appellants. ___________________  ____________________ record, we decline to reach it at this time. -10- 10