**Dale F. BRAMBLE,**

v.

**AMERICAN POSTAL WORKERS UNION, AFL–CIO, Providence Rhode Island Area Local.**

No. 95–497L.

United States District Court, D. Rhode Island.

May 2, 1997.

Kevin J. McAllister, Brennan, Recupero, Cascione, Scungio & McAllister, Providence, for Plaintiff.

Allen P. Rubine, Providence, Paul F. Kelly, Anne R. Sills, Segal, Roitman & Coleman, Boston, MA, for Defendants.

## OPINION AND ORDER

LAGUEUX, Chief Judge.

This case involves plaintiff's claim against his former union and employer, the American Postal Workers Union, AFL–CIO, Providence Rhode Island Area Local (the "union"), under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621–634 (1994). Plaintiff, who served as union president for nineteen years, argues that the union violated the ADEA when it adopted a policy which linked a president's pay to his salary as an employee of the United States Postal Service and interpreted that policy as requiring a reduction of plaintiff's salary as president from $43,000 to $3,000 because plaintiff had recently retired.

This matter is before the Court on the union's motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. For the reasons that follow, the union's motion is granted.

## I. Facts

The following facts are undisputed, except as noted.

The union represents United States Postal Service workers who are employed in the Rhode Island region. Plaintiff served as union president for nineteen years. He was first elected in 1974, and, for the first eleven years, he worked full-time for the Postal Service while serving as president. As compensation, plaintiff received his salary from the Postal Service, as well as an additional $3,000.00 from the union, as required by the union constitution. In November of 1985, however, the union's members voted to make plaintiff a full-time employee of the union, a position for which plaintiff was paid the equivalent of his Postal Service salary with benefits (a level five top step clerk's position), plus the additional $3,000.00. Subsequently, plaintiff's salary was raised to a level six top step salary. This salary was paid by the union, although plaintiff simultaneously maintained his official status as an active United States Postal Service employee.

In late 1989, the union purchased a building in Johnston, R.I. to serve as its office and meeting hall. It is uncontested that the purchase and renovation of this building placed a financial strain on the union, and, as a result, the union implemented several changes. Membership dues were increased by 40%, and the union terminated the secretary-treasurer's status as a full-time union employee. Subsequently, the secretary-treasurer resigned from office. In addition, the presi-

dent's salary was reduced to the salary for a level five top step clerk.

Plaintiff was most recently re-elected as union president in November of 1991. He was re-elected by a 35% vote in a close three-way race. In September of 1992, plaintiff accepted an early retirement package from the United States Postal Service. However, this did not then alter his status as union president.

Soon after plaintiff announced his retirement, some members of the union drafted a referendum to amend the union constitution with respect to the payment of the union president, an action that plaintiff contends was taken in direct response to his early retirement. The proposed amendment changed the president's salary from a fixed rate to a rate tied to the president's salary as an active Postal Service employee—a "no loss no gain rate" plus the required $3,000.00.

Ballots concerning the proposed amendment were mailed to the union's members in January of 1993, and, at the February meeting, the ballots were counted and the amendment passed. Immediately before the vote, one of the amendment's proponents stated: "I move that the Secretary Treasurer upon passage of the Referendum Question on Article 5 Section 1 immediately cease paying the retired President his full Postal salary."

The members of the union later adopted a second amendment to the union constitution at the June 1993 meeting in an effort to clarify the meaning of the first amendment. The second amendment provided that "the officer whose union duties necessitate absence from the postal duty assignment ... held by said officer, will receive no less than and no more than that officer would have received from the Postal Service with full attendance in said duty assignment." Pursuant to the two amendments, plaintiff's salary was reduced from approximately $43,000 (including the $3,000.00 required by the union constitution) to only the required $3,000.00. In addition, plaintiff's benefits package was terminated.

By letter dated March 10, 1993, plaintiff appealed the "no loss no gain" amendment to American Postal Workers Union ("APWU")

National President Moe Biller. However, the APWU National Executive Board never interfered with the union's adoption or interpretation of the amendment.

Plaintiff resigned effective July 1, 1993. His replacement, Leo Cacicio, an active United States Postal Service employee, was 41 years of age at the time. Under the "no loss no gain" policy, Cacicio received approximately $51,000 per year (including the required $3,000.00), plus benefits, for serving as union president.

On or about July 13, 1995, plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("E.E.O.C."), charging the union with age discrimination. Before the E.E.O.C., the union claimed that the original amendment was adopted "to change an inequitable pay situation" in the compensation for the union president, a characterization that plaintiff vigorously disputes. On or about July 28, 1995, the E.E.O.C. gave plaintiff permission to withdraw his charge before a determination was reached.

In the present proceeding, plaintiff asserts that the union has violated § 623(a) and § 623(c) of the ADEA in its capacity as an employer and a labor organization respectively. First, plaintiff advances a disparate treatment claim. It is plaintiff's principal contention that his political opponents used his eligibility for retirement, a function of plaintiff's age, as a vehicle to force him from office. Alternatively, plaintiff brings a disparate impact claim, arguing that the amendment under which his salary was reduced is a facially neutral policy that disproportionately affects persons in the age class protected under the ADEA. Based on these theories, plaintiff seeks damages for loss of earnings, liquidated damages, restoration of employment benefits, costs of suit, and attorney's fees.

The union, however, argues that plaintiff has not supported a disparate treatment claim because he has not alleged discriminatory animus on the basis of age. Rather, the union argues that plaintiff has shown, at most, that his opponents in the union desired to remove him from office for political reasons. The union also emphasizes that the

reduction in plaintiff's pay was based on plaintiff's "active pay status," a "reasonable factor other than age." In addition, the union contends that disparate impact claims are not cognizable-under the ADEA as a matter of law. Accordingly, the union asks that summary judgment be granted in its favor.[1]

After hearing oral arguments on the union's motion for summary judgment, the Court took the matter under advisement. The motion is now in order for decision.

## II. Standard of Decision

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A "material" fact is one that "has the capacity to sway the outcome of the litigation under the applicable law." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.), *cert. denied*, 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995). A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The movant must show that there is insufficient evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *Garside v. Osco Drug. Inc.*, 895 F.2d 46, 48 (1st Cir.1990). The nonmoving party must then "contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d at 735.

Courts are often hesitant to grant summary judgment when the issue at hand involves questions of intent. *See Kand Med., Inc. v. Freund Med. Prod., Inc.*, 963 F.2d 125, 127 (6th Cir.1992). However, "summary judgment may be appropriate '[e]ven in cases where elusive concepts such as motive or intent are at issue. if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 259 (1st Cir.1994) (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)).

On a motion for summary judgment, the Court must view the record and all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Continental Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991).

## III. Analysis

The ADEA "broadly prohibits arbitrary discrimination in the workplace based on age" against individuals who are forty years of age or older. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (quoting *Lorillard v. Pons*, 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978)); 29 U.S.C. § 631(a) (1994). To that end, 29 U.S.C. § 623(a) (1994) deems it unlawful for an employer to treat an individual in any way which would "deprive or tend to deprive [him] of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age."[2] Similarly, 29 U.S.C.

---

1. The union also disputes that plaintiff has satisfied certain jurisdictional requirements for suit under § 623(a) and § 623(c) of the ADEA. However, the Court's disposition of this case on the basis of the union's substantive arguments renders it unnecessary to address these additional issues.

2. 29 U.S.C. § 623(a) (1994) provides:
It shall be unlawful for an employer—
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
(3) to reduce the wage rate of any employee in order to comply with this chapter.

§ 623(c) (1994) prohibits a labor organization from discriminating against any individual because of his age.[3]

Claims under these provisions typically fall into two categories: disparate treatment and disparate impact.[4] A disparate treatment claim under the ADEA will lie when an individual is treated adversely because of his age. *See Equal Employment Opportunity Comm'n v. Francis W. Parker Sch.*, 41 F.3d 1073, 1076 (7th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 2577, 132 L.Ed.2d 828 (1995). In contrast, disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 608, 113 S.Ct. 1701, 1705, 123 L.Ed.2d 338 (1993) (quoting *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 335–336 n. 15, 97 S.Ct. 1843, 1854–1855, 52 L.Ed.2d 396 (1977)) (citations omitted). In the case at bar, plaintiff advances theories of both disparate treatment and disparate impact.

A. *Disparate Treatment*

One can establish a disparate treatment claim in one of two ways. A plaintiff may set forth direct evidence of age discrimination, or, alternatively, he may present evidence pursuant to the well-established framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–805, 93 S.Ct. 1817, 1824–1826, 36 L.Ed.2d 668 (1973). *See Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 478–479 (1st Cir.1993). Under the *McDonnell Douglas* burden-shifting approach, a plaintiff must first present a prima facie case by establishing that he was:

(i) within the protected age group, (ii) meeting the employer's legitimate perfor-

mance expectations, (iii) actually or constructively discharged, and (iv) replaced by another individual of similar skills and qualifications, thereby confirming the employer's continued need for equivalent services.

*Id.* at 479. Once the plaintiff advances a prima facie case, the burden of production shifts to the employer, who "must rebut the inference of age discrimination by articulating some legitimate, nondiscriminatory reason for the employment action." *Id.* If the employer asserts such a justification, the inference of age discrimination "drops from sight," and the plaintiff may only prevail by showing that the employer's alleged justification is a mere pretext, masking the employer's true "discriminatory animus." *Id.* (quoting *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 825 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992)). At all times, the plaintiff bears the burden of persuasion. *See. e.g., Id.*

In the present case, plaintiff asserts that the union discriminated against him on the basis of age when it utilized his retirement as a means to force him from office. Plaintiff argues that but for his age-eligibility for retirement the union would not have reduced his pay. In addition, plaintiff cites the remark made on the union floor referring to "the retired President" as evidence of the union's discriminatory animus.

In contrast, the union argues that, at best, plaintiff has demonstrated that his political opponents in the union desired to remove plaintiff from office and used his status as a retiree to alter the conditions of his employment. However, the union maintains that plaintiff has not presented any evidence indicating that the union's motivation was plaintiff's age.

---

3. 29 U.S.C. § 623(c) (1994) provides:
   It shall be unlawful for a labor organization—
   (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his age;
   (2) to limit, segregate, or classify its membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise

adversely affect his status as an employee or as an applicant for employment, because of such individual's age;
   (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

4. However, as will be discussed below, it is unclear whether disparate impact claims are cognizable under the ADEA.

Neither party has explicitly adhered to the framework typically followed in such cases. However, this Court need not attempt to categorize the parties' arguments as relating to the presentation of direct evidence or the various stages of the burden-shifting framework. As the First Circuit stated in *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir.1996):

> On summary judgment, the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus.

*See also Tucker v. Kingsbury Corp.*, 929 F.Supp. 50 (D.N.H.1996) (considering whether plaintiff had sufficiently alleged pretext after assuming *arguendo* that plaintiff had established a prima facie case and defendant had rebutted satisfactorily). Accordingly, this Court will focus solely on one element required for a cognizable disparate treatment claim—discriminatory animus. More specifically, this Court must decide whether plaintiff has presented evidence of discriminatory motivation by demonstrating that the union utilized plaintiff's status as a retired member of the United States Postal Service—a status necessarily dependent upon plaintiff's age—as a means to force him from office.

In *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), the Supreme Court held that an employer who fired an employee to prevent that employee's pension from vesting did not violate the ADEA. In so holding, the Supreme Court explicitly considered the scope of liability under the ADEA when an employer treats an employee differently on the basis of a characteristic that is closely linked with age. The Court emphasized that "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." *Id.* at 609, 113 S.Ct. at 1705.[5] The Court reasoned that "[b]ecause age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily age based.'" *Id.* at 611, 113 S.Ct. at 1707.

However, the Court noted that actions taken based on factors that correlate with age may form the basis for a disparate treatment claim under different circumstances. Indeed, the Court stated:

> We do not preclude the possibility that an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older thereby engages in age discrimination. Pension status may be a proxy for age, not in the sense that the ADEA makes the two factors equivalent, but in the sense that the employer may suppose a correlation between the two factors and act accordingly.

*Id.* at 612–613, 113 S.Ct. at 1707 (citations omitted). However, "[w]hen the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is." *Id.* at 611, 113 S.Ct. at 1706.

In the aftermath of *Hazen Paper*, courts have emphasized the requirement of discriminatory animus when analyzing disparate treatment claims brought under the ADEA.[6]

---

**5.** 29 U.S.C. § 623(f)(1) (1994) provides: "It shall not be unlawful for an employer, employment agency, or labor organization . . . (1) to take any action otherwise prohibited . . . where the differentiation is based on reasonable factors other than age . . ." Some courts have discussed policies similar to the amendments in the case at bar as relating to this provision. Indeed, the union asserts that the amendments at issue relate to active pay status—a "reasonable factor other than age." However, the Supreme Court never referred to this provision in *Hazen Paper*. *See* Howard C. Eglit, *Age Discrimination*, § 5.20 (2d ed.1994) ("the Court failed to even note the RFOA exception"). Accordingly, this writer will address plaintiff's case in light of the Supreme Court's requirement of "discriminatory animus" and not under the "reasonable factors other than age" provision.

**6.** Even before *Hazen Paper*, courts in the First Circuit required evidence of discriminatory motivation to support a disparate treatment claim under the ADEA. *See. e.g., Lawrence v. Northrop Corp.*, 980 F.2d 66 (1st Cir.1992) (upholding summary judgment for defendant when plaintiff

For example, in *Testerman v. EDS Technical Prods., Corp.*, 98 F.3d 297 (7th Cir.1996), the Seventh Circuit held that the plaintiff failed to support an ADEA claim by asserting that the managers who fired him during a reduction in staff took account of his years of service. In so holding, the Court stated: "[plaintiff's] failure lies not in any lack of connection between age and length of service, but in his inability to connect, even indirectly, length of service with discriminatory motive." *Id.* at 302. *Allen v. Diebold, Inc.*, 33 F.3d 674, 676 (6th Cir.1994) (noting that "the ADEA prohibits only actions actually motivated by age and does not constrain an employer who acts on the basis of other factors ... that are empirically correlated with age"); *Lyon v. Ohio Educ. Ass'n and Prof'l Staff Union*, 53 F.3d 135 (6th Cir.1995) (holding that plaintiff had failed to allege a prima facie case of age discrimination when there was no evidence that defendant was motivated by discriminatory animus).

The present case is analogous to the circumstances addressed in *Hazen Paper* because active pay status and age are "analytically distinct." Indeed, an employer may account for active pay status while ignoring an employee's age. For example, a postal worker who is on disability would not receive pay from the United States Postal Service, and, therefore, he would receive the same treatment as plaintiff under the recent amendments to the union's constitution.

Plaintiff, in his motion papers, repeatedly refers to retirement as the factor upon which the union's actions against him were taken, rather than his active pay status. On this basis, plaintiff makes a weak attempt to distinguish *Hazen Paper*, in which pension benefits vested upon an individual's accrual of the requisite number of years of service. Indeed, in *Hazen Paper*, the Court did state that it did "not consider the special case where an employee is about to vest in pension benefits as a result of his *age*, rather than years of service, and the employer fires the employee in order to prevent vesting." 507 U.S. at 613, 113 S.Ct. at 1707 (citations omitted). Since the present case involves "retirement," a status more closely linked to age than years of service, plaintiff argues that this case presents a stronger factual predicate for a disparate treatment claim than *Hazen Paper*, implying that there may be a lesser need for proof of discriminatory animus.

However, in so arguing, plaintiff misrepresents the amendments to the union's constitution. Those amendments require that a union officer be paid in accordance with his active pay status, not his retirement status. As explained above, this may have an adverse affect on employees who maintain inactive status with the United States Postal Service *for any reason*, not just retirement. As such, this case may not be distinguished from *Hazen Paper*; both active pay status and years of service are correlated with age, but discriminatory animus must be shown to support a cognizable disparate treatment claim.

In this regard, plaintiff has not even alleged that the union was motivated by plaintiff's age when it acted to drastically reduce his salary. Leaving aside obvious obstacles to proving improper motivation in a context where hundreds of union members voted to pass the amendments, plaintiff has merely claimed that his opponents in the union believed plaintiff to be an undesirable union president for political reasons, and, consequently, reacted to his early retirement by initiating the referendum to alter the payment of union officers. In such circumstances, plaintiff's age-eligibility for retirement was merely a tool used to affect plaintiff adversely, not the impetus for treating plaintiff adversely. Since plaintiff was not targeted because of his age, retirement status was not a proxy for age in the manner forbidden by *Hazen Paper*.[7]

---

failed to present evidence that defendant's actions were motivated by age discrimination) *Corrigan v. State of Rhode Island, Dep't of Business Regulation*, 820 F.Supp. 647, 658 (D.R.I.1993) ("lack of any evidence suggesting that the defendants' actions resulted from a discriminatory animus provides an independent basis for dismissing the [age discrimination] claim").

7. In support of his argument, plaintiff cites *E.E.O.C. v. Local 350, Plumbers and Pipefitters*, 982 F.2d 1305 (9th Cir.1992), a pre-*Hazen Paper* case. In *Local 350*, the Ninth Circuit reversed a

Plaintiff's argument that the union violated the ADEA because age was a decisive factor in the adoption and interpretation of the amendments relating to the payment of union officers is of no moment. Plaintiff bases this argument on the Supreme Court's statement in *Hazen Paper* that "a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." 507 U.S. at 610, 113 S.Ct. at 1706. However, this sentence in no way exempts a plaintiff from proving discriminatory motivation. When read in light of the entire *Hazen Paper* opinion, it is clear that the Supreme Court meant that age must be a but for factor *motivating a defendant.* Indeed, the cases that plaintiff cites for this proposition also discuss discriminatory animus as a prerequisite to the successful assertion of a disparate treatment claim under the ADEA. *See. e.g., Kralman v. Illinois Dep't of Veterans' Affairs,* 23 F.3d 150 (7th Cir.), *cert. denied,* 513 U.S. 948, 115 S.Ct. 359, 130 L.Ed.2d 313 (1994) (Plaintiff need only prove " 'that age was a determining factor in the sense that [the employment decision would not have been made] but for the employer's motive to discriminate on the basis of age' ") (quoting *Oxman v. WLS–TV,* 846 F.2d 448, 452 (7th Cir.1988)) (additions in original). Since plaintiff has failed to present any evidence of discriminatory motive based on age, he has failed to allege a cognizable disparate treatment claim.

■ The comment made on the union floor referring to "the retired President" does not alter this reasoning. First, this remark was made by one union member out of hundreds. Therefore, it cannot serve as proof of the motivation of the entire union. *Cf. Testerman v. EDS Technical Prods. Corp.,* 98 F.3d 297, 301 (7th Cir.1996) (holding that plaintiff failed to establish discriminatory motive when none of the age-biased comments presented as evidence were made by people who decided to fire plaintiff). Second, this comment merely referred to plaintiff's status as a retiree, not as a person of the protected age class. As such, this remark in no way indicates that union members were motivated by improper age discrimination. Rather, the statement was consistent with the undisputed fact that plaintiff had political opponents in the union who desired his resignation from office. For these reasons, this remark, the only evidence relating to discriminatory animus, does not create an issue of material fact as to whether the union was motivated by age-based animus.

### B. Disparate Impact

The disparate impact theory was originally conceived under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e—2000e–17 (1994) ("Title VII"). In *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), the seminal disparate impact case, the Supreme Court held that a facially neutral test that tended to exclude African Americans disproportionately from the employment pool violated Title VII when the test at issue did not measure skills that were correlated with job performance. In so holding, the Supreme Court stated:

> [Title VII] proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation. The touchstone is business necessity. If

---

finding of summary judgment for a union which had a policy of refusing to list retired members for job referral unless they ceased receiving their pension. The Ninth Circuit did not discuss discriminatory animus in that opinion. Rather, it emphasized that treating employees who retired because of age-eligibility (not years of service) in an adverse manner violated the ADEA.

However, plaintiff failed to alert the Court that the original *Local 350* opinion was amended and superseded by 998 F.2d 641 (9th Cir.1992). In the later opinion, written after the Circuit Court was petitioned for rehearing based on *Hazen Paper,* the Ninth Circuit stated: "We perceive no conflict between *Hazen* and our decision in this case." *Id.* at 648 n. 2. However, the Court did emphasize that in disparate treatment cases, "[p]roof of discriminatory motive is critical although it can in some situations be inferred from the mere fact of differences in treatment ..." *Id.* (quoting *Hazen Paper,* 507 U.S. at 609, 113 S.Ct. at 1705). On remand, the Ninth Circuit instructed the district court to "direct the EEOC to articulate its theory or theories of discrimination in accordance with the principles set forth in *Hazen." Id.* Therefore, *E.E.O.C. v. Local 350* does not provide support for exempting plaintiff from establishing impermissible age-based animus.

an employment practice which operates to exclude Negroes cannot be shown to be related to job performance, the practice is prohibited.

*Id.* at 431, 91 S.Ct. at 853.

After *Griggs,* Congress codified the disparate impact theory under Title VII in the Civil Rights Act of 1991, 42 U.S.C. § 2000e–2(k)(1)(A) (1994).[8] Congress, however, has never codified the disparate impact theory with respect to the ADEA. *See. e.g., Camacho v. Sears Roebuck de Puerto Rico,* 939 F.Supp. 113, 119 (D.P.R.1996).

Although Title VII analysis has been applied to analysis under the ADEA in numerous contexts, *see. e.g., Caron v. Scott Paper Co.,* 834 F.Supp. 33, 36 (D.Me.1993), it remains unclear whether the disparate impact theory should be extended to claims under the ADEA as well. Indeed, the Supreme Court has recognized that "[t]here are important similarities between [Title VII and the ADEA], ... both in their aims—the elimination of discrimination in the workplace—and in their substantive provisions." *Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978). However, in *Hazen Paper,* the Court noted that it has "never decided whether a disparate impact theory of liability is available under the ADEA." 507 U.S. at 610, 113 S.Ct. at 1706. Justice Kennedy, in a concurring opinion joined by Chief Justice Rehnquist and Justice Thomas, expressed doubt that disparate impact claims are cognizable under the ADEA. He asserted: "there are substantial arguments that it is improper to carry over disparate impact analysis from Title VII to the ADEA." *Id.* at 618, 113 S.Ct. at 1710 (Kennedy, J., concurring).

Accordingly, some courts have interpreted *Hazen Paper* as "cast[ing] doubt on the viability" of disparate impact claims under the ADEA. *DiBiase v. SmithKline Beecham*

*Corp.,* 48 F.3d 719, 732 (3rd Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995) ("in the wake of *Hazen,* it is doubtful that traditional disparate impact theory is a viable theory of liability under the ADEA"). *See also E.E.O.C. v. Francis W. Parker Sch.,* 41 F.3d 1073, 1077 (7th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2577, 132 L.Ed.2d 828 (1995) ("decisions based on criteria which merely tend to affect workers over the age of forty more adversely than workers under forty are not prohibited").

Other courts have indicated that disparate impact claims are viable under the ADEA after *Hazen Paper. See. e.g., Smith v. City of Des Moines, Iowa,* 99 F.3d 1466, 1470 (8th Cir.1996) ("disparate impact claims under the ADEA are cognizable"); *Hunt v. Tektronix, Inc.,* 952 F.Supp. 998 (W.D.N.Y.1997) (" [u]ntil the Second Circuit pronounces otherwise, disparate impact claims may be asserted under the ADEA ..."); *Caron v. Scott Paper Co.,* 834 F.Supp. 33 (D.Me.1993) (holding that disparate impact claims are viable under the ADEA).

Other courts have followed an alternate approach, whereby they assume that these claims are viable and then determine whether a prima facie case has been established. However, such courts "have done so ... in circumstances where the assumption was, it may be argued, not dispositive of the case." *Camacho v. Sears, Roebuck de Puerto Rico,* 939 F.Supp. 113, 119 (D.P.R.1996). *See. e.g., Koger v. Reno,* 98 F.3d 631 (D.C.Cir.1996).

■■■■ Due to this ongoing controversy, the parties' arguments focus on the viability of disparate treatment claims under the ADEA. However, this Court need not enter the debate. Although the First Circuit has not explicitly decided whether disparate impact claims are cognizable under the ADEA, in an

---

8. § 2000e–2(k)(1)(A) (1994) provides:

(k) Burden of proof in disparate impact cases (1) (A) An unlawful employment practice based on disparate impact is established under this subchapter only if—
(i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin

and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity; or
(ii) the complaining party makes the demonstration described in subparagraph (C) with respect to an alternative employment practice and the respondent refuses to adopt such alternative employment practice.

unpublished disposition decided after *Hazen Paper,* the First Circuit assumed *arguendo* the viability of such claims, but held that other factors precluded a finding for the plaintiff. See *Graffam v. Scott Paper Co.,* No. 95–1046, 1995 WL 414831 (1st Cir. July 14, 1995) (unpublished disposition). Moreover, as support for its decision in *Graffam,* the First Circuit characterized its pre-*Hazen Paper* decision, *Holt v. Gamewell,* 797 F.2d 36 (1st Cir.1986), as employing the same approach. *See* 1995 WL 414831, at *3. The present case merits a similar disposition, for assuming *arguendo* that disparate impact claims are viable under the ADEA, plaintiff has not demonstrated a cognizable claim.

▆▆▆▆ A plaintiff may establish a prima facie case of disparate impact by:

(1) identify[ing] the specific employment practices or selection criteria being challenged; (2) show[ing] disparate impact on the basis of age; and (3) show[ing] that the practice in question has caused the exclusion of applicants for jobs or promotions because of their age.

*Caron v. Scott Paper Co.,* 834 F.Supp. 33, 38 (D.Me.1993). If the plaintiff sufficiently establishes a prima facie case:

the defendant must then attempt to debunk the sufficiency of the plaintiff's evidence or, in the alternative, show that the challenged practice is either job related and consistent with business necessity or that it fits within a specific statutory exception.

*Graffam v. Scott Paper Co.,* 1995 WL 414831, at *3. The employer may then attempt to justify its actions, and the plaintiff may rebut such evidence by "showing, inter alia, an alternate practice exists that equally protects the employer's putative interest but does not disproportionately burden employees in the protected class." *Id.*

Plaintiff has identified the amendments at issue as potentially violative of the ADEA and alleged that these facially neutral amendments have a disparate impact on un-

ion members of the protected age class. Plaintiff has only alleged that the amendments at issue have affected him adversely, however, even assuming that plaintiff has established a prima facie case, his disparate impact claim must inevitably fail.[9]

42 U.S.C. § 2000e–2(k)(1)(A)(i) (1994) provides that a neutral policy having a disproportionate effect on a protected group will not be actionable if it "is job related for the position in question and consistent with business necessity." The employer must "shoulder the burden of proving that defense." *See. e.g, Donnelly v. Rhode Island Bd. of Governors for Higher Educ.,* 929 F.Supp. 583, 589 (D.R.I.1996), *aff'd* 110 F.3d 2 (1st Cir.1997).

What is meant by the terms "job related" and "business necessity," however, is not entirely clear. Indeed, as Judge Torres of this District stated:

The terms 'consistent with' and 'necessity' connote two different notions. Two things are consistent with one another if they are in harmony as opposed to being in conflict. On the other hand, something is a necessity if it is required or compelled. Since § 2000e–2(k)(1)(A)(i) uses these terms conjunctively, it is not clear whether Congress intended the standard to be that adherence to the challenged practice is required to conduct the employer's business; that the practice is closely related to a legitimate business purpose; or something in between.

*Donnelly,* 929 F.Supp. at 593. Indeed, in *Griggs,* the Supreme Court stated that "the touchstone" defining a permissible policy is "business necessity." *Graffam v. Scott Paper Co.,* 870 F.Supp. 389, 399 n. 18 (D.Me. 1994), *aff'd,* No. 95–1046, 1995 WL 414831 (1st Cir. July 14, 1995) (unpublished disposition) (quoting *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971)). However, the Court continued by stating that a "prohibited" practice is one that "cannot be shown to be related to job

9. Typically, plaintiffs establish that a policy has had a disparate impact upon a protected class by presenting statistical evidence of that policy's effect. In the present case, plaintiff has merely established one instance in which the union's amendments had an adverse effect upon a member of the protected age group. However, since plaintiff's claim must fail for other reasons, this Court need not address the sufficiency of his prima facie case.

performance " *Id* (quoting *Griggs v. Duke Power Co.*, 401 U.S. at 431, 91 S.Ct. at 853). In the wake of *Griggs,* courts have differed as to the proper interpretation of this language. For example, in *Dothard v. Rawlinson,* 433 U.S. 321, 331 n. 14, 97 S.Ct. 2720, 2728 n. 14 , 53 L.Ed.2d 786 (1977), the Supreme Court stated that "a discriminatory employment practice [challenged on disparate impact grounds] must be shown to be necessary to safe and efficient job performance to survive a Title VII challenge." However, in *Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 659, 109 S.Ct. 2115, 2126, 104 L.Ed.2d 733 (1989), the Supreme Court did not require that a "challenged practice be essential' or indispensable' to the employer's business for it to pass muster ..." *See Houghton v. SIPCO, Inc.,* 38 F.3d 953, 958 (8th Cir.1994) (noting that *Wards Cove* lessened the burden of employers asserting a business necessity defense to a suit under Title VII). Rather, the Court described "the dispositive issue [as] whether a challenged practice serves, in a significant way, the legitimate employment goals of the employer." *Wards Cove,* 490 U.S. at 659, 109 S.Ct. at 2126. *See also Graffam v. Scott Paper Co.,* 870 F.Supp. at 399 n. 18–n. 20 (describing history of the interpretation of this exception).

The history of the amendments to Title VII indicate that " § 2000e–2(k)(1)(A) was designed to codify the concepts of 'business necessity' and 'job relatedness' as they existed before the Supreme Court's decision in *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989)." *Donnelly,* 929 F.Supp. at 593. Given the varying interpretations accorded those terms even before *Wards Cove,* however, such a statement does not fully resolve the ambiguities inherent in the statute. *See Graffam v. Scott Paper Co.,* 870 F.Supp. at 399.

Courts in the First Circuit that have addressed the issue have considered less than absolute necessity sufficient to fulfill the req-

uisites of the statute. *See Graffam v. Scott Paper,* 870 F.Supp. at 400 ("business necessity inquires whether the job criteria arise out of a manifest business need and the job related standard inquires whether there is a correlation between the criteria used and successful job performance"). *See also Donnelly,* 929 F.Supp. at 593 (holding that the term "consistent with business necessity" requires "proof that the challenged practice is reasonably necessary to achieve an important business objective"). Under such standards, it is clear that the union's amendments fall squarely within the exception for policies that are job related and justified by business necessity.

In support of his claim, plaintiff argues that the amendments "serve no business end whatsoever" because plaintiff's successor is paid $48,000.00 more than plaintiff was being paid at the time of his resignation. In so arguing, plaintiff mistakenly equates business justification—solely with financial considerations. However, it is clear that the amendments, which drastically reduce the possibility that an inactive Postal Worker will serve as a union officer, further significant union goals. Inactive employees may not have the same concerns as active employees, and it is likely that they will not have a direct stake in the success or failure of union activities.

Indeed, it is well-established that unions may entirely exclude retired members from serving as union officers, as opposed to simply making it less desirable to do so. Such policies have been upheld by the District of Columbia Circuit, and they have been explicitly permitted by government regulation. *See Shelley v. Brock,* 793 F.2d 1368 (D.C.Cir.1986) (upholding as not unreasonable the Secretary of Labor's decision that the Labor–Management Reporting and Disclosure Act ("LMRDA") permitted unions to exclude retired members from representation in union elections); 29 C.F.R. § 452.41(a) (1995).[10] *Cf. Reich v. Local 30, Int'l Bhd. of*

---

10. 29 C.F.R. § 452.41(a) (1995) provides, in pertinent part:
  It would ordinarily be reasonable for a union to require candidates to be employed at the trade or even to have been so employed for a

reasonable period. In applying such a rule an unemployed member is considered to be working at the trade if he is actively seeking such employment. Such a requirement should not be so inflexible as to disqualify those members

*Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO,* 6 F.3d 978 (3rd Cir.1993) (upholding under the LMRDA a union policy deeming a union member who had been out of work for six months as ineligible to run for union office due to his inactive status).

Although the union has not set forth these justifications of its own accord, it is abundantly clear that the union amendments, which encourage only active employees to serve as union officers, are both job related and justified by business necessity. Moreover, plaintiff has not suggested any alternative policy that the union may follow to ensure that union officers and other union members have the same incentives. Accordingly, assuming *arguendo* that disparate impact claims are viable under the ADEA, this Court concludes that summary judgment nevertheless must be granted to the union.

**IV. Conclusion**

For the foregoing reasons, defendant's motion for summary judgment is granted. The Clerk will enter judgment for defendant forthwith.

It is so ordered.

who are familiar with the trade but who because of illness, economic conditions, or other good reasons are temporarily not working.