UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 97-1683

DALE BRAMBLE,
Plaintiff - Appellant,

v.

AMERICAN POSTAL WORKERS UNION,
AFL-CIO PROVIDENCE LOCAL,
Defendant - Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge] 



Before

Torruella, Chief Judge, 

Godbold,* Senior Circuit Judge, 

and Barbadoro,** District Judge. 



Kevin J. McAllister, with whom Brennan, Recupero, Cascione, 
Scungio & McAllister was on brief for appellant. 
Paul F. Kelly, with whom Anne R. Sills and Segal, Roitman & 
Coleman were on brief for appellee. 



January 27, 1998


 

* Of the Eleventh Circuit, sitting by designation.

** Of the District of New Hampshire, sitting by designation.

TORRUELLA, Chief Judge. Dale F. Bramble sued his TORRUELLA, Chief Judge. 

employer, the American Postal Workers, AFL-CIO, Providence, Rhode

Island Area Local, (the "Union") under the Age Discrimination in

Employment Act of 1967 ("ADEA"), 29 U.S.C. 621-34, in the

Federal District Court of Rhode Island. He alleges that the

Union discriminated against him on the basis of his age when it

adopted a new salary structure for his office of Local Union

President, effectively eliminating his salary. Bramble brought

this suit under both a disparate treatment and a disparate impact

theory of recovery. The district court dismissed the case on

summary judgment and this appeal followed. See Bramble v. 

American Postal Workers Union, AFL-CIO, 963 F. Supp. 90 (D.R.I. 

1997). We affirm.

BACKGROUND BACKGROUND 

The following facts are essentially undisputed.

Bramble, a United States Postal Service ("Postal Service")

worker, was first elected to the Union presidency in 1974. For

eleven years thereafter, he held the post while working full-time

at the postal service. In 1985, the Union voted to make the

presidency a full-time position. The Union paid Bramble a $3,000

stipend plus the equivalent of his old salary. In spite of the

fact that he was no longer drawing a salary from the Postal

Service, Bramble maintained his status as an active Postal

Service employee as he continued to hold the presidency.

In November 1991, Bramble was re-elected as the Union

president in a close three-way race in which he garnered only 35

-2-

percent of the vote. The year following his re-election, Bramble

accepted an early retirement package from the Postal Service. At

that point, Bramble began drawing a federal pension in addition

to his full salary as Union president.

In January 1993, with the majority of the Union

opposing Bramble's administration, an amendment to the Union

constitution was adopted by a vote of 34-23. The amendment

revised the salary structure of the Union presidency from a fixed

rate to a rate that was tied to the president's salary as an

active Postal Service employee. According to this "active pay

status" rate, any Union president receives a $3,000 stipend in

addition to the salary he or she would receive in accordance with

his or her active status with the Postal Service.1

Pursuant to the new policy, more experienced postal

workers serving as president receive higher salaries than less

experienced workers holding the same position, while presidents

who are retired or on disability receive a mere $3,000 in annual

compensation. Because Bramble was retired, the salary he was

receiving in addition to the stipend was eliminated. It is also

undisputed that Bramble was disliked by many in the union, and

that the amendment was intended by many, if not all, of its

supporters as a means to force Bramble's resignation. On July 1,

1993, Bramble did just that.
 

1 The original amendment to the Union constitution was somewhat
confusing, but a subsequent amendment was adopted to clarify the
"active pay status" policy. The district court opinion refers to
this "active pay status" policy as the "no loss, no gain"
amendment. See Bramble, 963 F. Supp. at 93. 

-3-

Two weeks later, Bramble brought this suit in the

Federal District Court of Rhode Island alleging that the Union's

actions amounted to a constructive discharge based upon age

discrimination in violation of the ADEA, 29 U.S.C. 626.

Bramble sued the Union in both its capacity as an "employer" and

as a "labor union" under the ADEA. Bramble's amended complaint

employed both disparate treatment and disparate impact theories

of recovery. In his disparate treatment claim, Bramble alleges

that the defendant used his eligibility for retirement, a proxy

for his age, as a means to force him from office. In his

disparate impact claim, Bramble alleges that the new salary

structure is a policy which disproportionately affects people

protected by the ADEA. The district court dismissed this case on

summary judgment, concluding that there was insufficient evidence

to create a genuine dispute as to whether the Union was motivated

by age-based animus and that business necessity justified the

Union's new policy.

DISCUSSION DISCUSSION 

I. Jurisdiction I. Jurisdiction

As a preliminary matter, the Union claims that this

court does not have jurisdiction over this case because the Union

is not covered as an "employer" under the ADEA, 29 U.S.C. 

623(a). An employer is only subject to the ADEA if it employs

"twenty or more employees for each working day in each of twenty

or more calendar weeks in the current or preceding calendar

year." 29 U.S.C. 630(b). The Union claims that Bramble was

-4-

its only true employee and that it is thus outside the scope of

the ADEA. This argument is bolstered by an examination of the

Union's W-3 forms, which reveal that, while over thirty union

"employees" received some form of compensation during the years

at issue, almost all of these "employees" received less than one

thousand dollars per year. While this fact casts doubt on

whether twenty or more employees were actually engaged in Union

work for each working day in twenty or more calendar weeks, the

record at this stage of the case does not contain any schedules

or time sheets to indicate when employees were at the Union or

engaged in Union duties. Construing this limited record in the

light most favorable to Bramble, we must conclude that there is a

genuine issue of material fact regarding the qualification of the

Union as an "employer" under sections 623(a) and 630. Therefore,

it is premature for this court to declare that the district court

acted without proper subject matter jurisdiction when it

considered the merits of this case for summary judgment purposes.

Furthermore, "'[i]t is a familiar tenet that when an

appeal presents a jurisdictional quandry, yet the merits of the

underlying issue, if reached, will in any event be resolved in

favor of the party challenging the court's jurisdiction, then the

court may forsake the jurisdictional riddle and simply dispose of

the appeal on the merits.'" See Rojas v. Fitch, 127 F.3d 184, 

187 (1st Cir. 1997) (quoting Hachikian v. FDIC, 96 F.3d 502, 506 

n.4 (1st Cir. 1996)). In light of the fact that summary judgment

-5-

for the Union is affirmed herein, we are not inclined to remand

on jurisdictional grounds.

The Union also argues that it is not required to

conform to ADEA requirements because it is not a "labor

organization" covered by section 623(c). A labor organization

under the ADEA represents employees of a covered "employer," and

any corporation wholly owned by the federal government is

specifically excluded from the ADEA's definition of "employer."

See 29 U.S.C. 630(b). However, if the Union is subject to the 

requirements of the ADEA by virtue of its status as an "employer" 

under section 623(a) and is being sued in that capacity, it is

irrelevant whether it also qualifies as a "labor organization"

under section 623(c). Thus, the Union's second jurisdictional

argument has been mooted by our finding that summary judgment on

the issue of subject matter jurisdiction would be premature.

II. Disparate Treatment II. Disparate Treatment

Review of a district court's award of summary judgment

is de novo. See United Nat'l Ins. Co. v. Penuche's, Inc., 128 

F.3d 28, 30 (1st Cir. 1997). We view the entire record in the

light most hospitable to the party opposing summary judgment,

indulging all reasonable inferences in that party's favor. See 

Ahern v. O'Donnell, 109 F.3d 809, 811 (1st Cir. 1997). 

The ADEA was promulgated by Congress out of a concern

that older workers were being deprived of employment

opportunities due to inaccurate stereotypes. See EEOC v. 

Wyoming, 460 U.S. 226, 231 (1983). To establish a disparate 

-6-

treatment claim under the ADEA, an employee must show that he was

treated adversely because of his age. Mesnick v. General Elec. 

Co., 950 F.2d 816, 823 (1st Cir. 1991), cert. denied, 504 U.S. 

985 (1992). To survive summary judgment, the employee must first

either present direct evidence of discrimination or make out a

prima facie case of discrimination, invoking the burden-shifting

framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802- 

05 (1973). See Mesnick, 950 F.2d at 823. In this case, there 

was no direct evidence of discrimination.2 Therefore, Bramble

was required to make out a prima facie case demonstrating that

(1) he was over the age of forty; (2) his work was sufficient to

meet his employer's legitimate expectations; (3) his employer

took adverse action against him; and (4) the employer sought a

replacement with roughly equivalent job qualifications, thus

revealing a continued need for the same services and skills. See 

id. (citing Hebert v. Mohawk Rubber Co., 872 F.2d 1104, 1110 (1st 

Cir. 1989)).

Bramble's claim was different from most age

discrimination claims insofar as he held an elected office. He 

was employed collectively by the union members. This obviously

complicated Bramble's task of showing discriminatory animus on

the part of his employer. The decision to constructively

 

2 Bramble argues that some direct evidence of discrimination did
exist in this case. He points to a comment made by a union
member on the floor prior to the vote on the amended salary
structure, referring to Bramble as "the retired President."
However, this comment plainly provides no evidence of age
discrimination.

-7-

discharge Bramble was made by a majority of the 57 members of the

union electorate who voted on the amendment, and, as courts are

acutely aware, determining the "motive" behind a policy adopted

via popular vote is a monumental challenge. See e.g., O'Brien v. 

United States, 391 U.S. 367, 383-84 (1968) ("[i]nquiries into 

congressional motives or purposes are a hazardous matter"). For

example, the requirement that Bramble's work be "sufficient to

meet his employer's legitimate expectations" effectively became a

requirement that Bramble be a successful politician. Here was

where Bramble's improbable effort to prove age discrimination on

the part of an entire union electorate ultimately failed.

Dale Bramble eventually lost favor with his Postal

Worker constituents. Bramble's counsel may have stated it most

succinctly when he stated that "there were a lot of people in the

Union who did not like him." After nineteen years as the Union

President, Bramble's counsel explained, he had made enough

enemies that "[the Union] wanted to get rid of him for several

reasons." For over a year, Bramble had continued as President

after failing to win a majority in the presidential election, and

there is no evidence that his popularity was increasing. The

transcript of the Union meeting at which the amendment was

adopted reveals that Bramble was perceived by various members of

the Union as being insulated, greedy, uncommunicative, and

generally untrustworthy. It is not for this or any court to

determine the character of the plaintiff in this case, but it is

relevant that the Union members were critical of their President.

-8-

None of the members who spoke out against Bramble on that evening

criticized him as being too old for his job. In the face of this

evidence that the majority of the union members were displeased

with Bramble's presidency, and due to the lack of any evidence to

the contrary, we reject Bramble's claims of disparate treatment.

In essence, he failed to establish a key element of his prima

facie case of disparate treatment -- that "his work was

sufficient to meet his employer's legitimate expectations."3

Bramble argues that even if the Union wanted to oust

him as president for reasons other than age, it violated the ADEA

when it implemented its new "active pay status" salary plan. He

alleges that the plan "constitutes a form of overt discriminatory

animus" because retirement status is tied to age. Essentially,

Bramble argues that because older people are the only people

eligible for retirement, and because the new salary structure

would have the primary effect of discouraging retired people from

seeking the Union presidency, the new salary structure is per se

age discrimination. However, Bramble's argument fundamentally

misinterprets Hazen Paper v. Biggens, 507 U.S. 604 (1993), the 

most recent Supreme Court case on this issue.

In Hazen Paper, the Court considered "whether an 

employer violates the ADEA by acting on the basis of a factor,

such as an employee's pension status or seniority, that is

empirically correlated with age." Id. at 608. In holding for 
 

3 The Union has since amended its constitution to provide for
run-off elections so that no President will ever again be elected
without winning a majority vote.

-9-

the employer in that case, the Court clarified that "there is no

disparate treatment under the ADEA when the factor motivating the

employer is some feature other than the employee's age." Id. at 

609. The reasoning behind the Court's decision was that "age and

years of service are analytically distinct, an employer can take

account of one while ignoring the other, and thus it is incorrect

to say that a decision based on years of service is necessarily

'age based.'" Id. at 611. 

Despite Bramble's attempts to distinguish pension

status from "active pay status," the analysis under the ADEA must

be the same. While retired postal workers likely outnumber those

postal workers on disability or unpaid leave, the fact remains

that the group negatively affected by the active pay status

policy is "analytically distinct" from the group of retirement

aged postal employees. In other words, there is a positive

correlation between active pay status and age, but one is not an

exact proxy for the other.

Hazen Paper explains that where an employment decision 

is premised upon an age-correlated but analytically distinct

factor, a violation of the ADEA has occurred only if there is

additional evidence that the employer was motivated by an age-

discriminatory animus. Id. at 612-13. As discussed above, there 

is no such evidence in this case. The plaintiff's disparate

treatment claim must fail.

III. Disparate Impact III. Disparate Impact

-10-

Bramble also claims that the Union's new salary

structure has a "disparate impact" on older persons in violation

of the ADEA. A "disparate impact" claim involves "'employment

practices that are facially neutral in the treatment of different

groups but that in fact fall more harshly on one group than

another and cannot be justified by a business necessity.'" Hazen 

Paper, 507 U.S. at 609, quoting Teamsters v. United States, 431 

U.S. 324, 335-36, n.15 (1977). Statistics comparing persons

holding at-issue jobs and composition of qualified job applicants

are commonly a basic component of a disparate impact claim. See 

Wards Cove Packing Co., Inc. v. Atonio, 490 U.S. 642, 650-51 

(1989). As the Supreme Court has repeatedly reminded, there has

been no definitive interpretation of the applicability of

disparate impact analysis to the ADEA. See Hazen Paper, 507 U.S. 

at 610; Markham v. Geller, 451 U.S. 945 (1981) (Rehnquist, J., 

dissenting from denial of certiorari). Furthermore, this Court

has never addressed the question. However, this case does not

present this Court with a proper occasion to take up the

question, because, even assuming arguendo that these claims are 

viable under the ADEA, it is plainly apparent that Bramble has

insufficient evidence to support his claim.

In this case, the effect of the questioned employment

practice has not fallen on a group at all, but on one person.

Only the president's salary was modified by the amendment. Thus

it is undisputed that the only person affected by the active pay

status policy was Bramble. Where an employer targets a single

-11-

employee and implements a policy which has, to date, affected

only that one employee, there is simply no basis for a disparate

impact claim.

Instead, it appears that Bramble's claim is actually

prospective, i.e., he argues that it is apparent "on its face"

that the active pay status policy will have a foreseeable 

disparate impact. However, proper disparate impact claims only

involve facially neutral policies. See Hazen Paper, 507 U.S. at 

609. Therefore, Bramble's disparate impact claim actually folds

into his failed disparate treatment claim. See supra. Thus, we 

need not address whether the Union had shown a "business

necessity" for its new policy, the issue which persuaded the

district court to grant summary judgment on this disparate impact

claim. See Bramble, 963 F. Supp. at 98-102.  

IV. Reasonable Notice IV. Reasonable Notice

Bramble argues that the district court's award of

summary judgment failed to meet the requirements of Fed. R. Civ.

P. 56(c) entitling the party opposing summary judgment to ten

days notice and an opportunity to respond. See Stella v. Town of 

Tewksbury, 4 F.3d 53, 56 (1st Cir. 1993). He argues that the 

district court awarded summary judgment on two grounds that were

not discussed in the Union's Motion for Summary Judgment --

namely that there was no evidence of discriminatory animus as

required by Hazen Paper and that the Union had established a 

business necessity for its new salary structure. Bramble

contends that the ruling thus conflicted with the well-

-12-

established principle that a trial court must give notice to both

parties of any issues it will be considering for summary judgment

that exist outside of the original Motion for Summary Judgment.

See Stella, 4 F.3d at 56. 

"'The purpose of Rule 56 (c) is to allow a party to

have a meaningful opportunity to challenge a summary judgment

motion.'" Delgado-Biaggi v. Air Transport Local 501, 112 F.3d 

565, 567 (1st Cir. 1997) (quoting C a. Petrolera Caribe, Inc. v. 

Arco Caribbean, Inc., 754 F.2d 404, 409 (1st Cir. 1985)). 

Indeed, where a party did not have an adequate opportunity to

address the rationale behind the summary judgment in the district

court, we will not address the substance of the claims on appeal

because "'leapfrogging to the merits would display much the same

disregard for established protocol that marred the district

court's performance.'" Delgado-Biaggi, 112 F.3d at 568 (quoting 

Stella, 4 F.3d at 55). However, while a party must receive an 

adequate opportunity to challenge the general grounds of a

prospective award of summary judgment, a party need not have an

opportunity to address every step of the reasoning employed or

every case relied upon by the district court. In this case,

Bramble filed two briefs over the course of two months in which

he attempted to distinguish Hazen Paper, the case on which the 

district court and this court ultimately rely in dismissing

Bramble's disparate treatment claim. Since his disparate impact

claim merely extends from this failed disparate treatment claim,

Bramble's inability to successfully distinguish Hazen Paper was 

-13-

fatal to both claims. Thus we reject Bramble's argument that he

was denied reasonable notice.

For the reasons stated herein, the district court's

award of summary judgment is affirmed. 

-14-